**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION**

| | |
|---|---|
| BARBARA TRUSS,<br>individually and on behalf of all others<br>similarly situated, | Case No. _____ |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| BAYER HEALTHCARE<br>PHARMACEUTICALS INC., a Delaware<br>Corporation; BAYER HEALTHCARE LLC, a<br>Delaware limited liability company; BAYER<br>AG, a public limited company; BEIERSDORF,<br>INC., a Delaware corporation; BEIERSDORF<br>NORTH AMERICA, INC., a Delaware<br>corporation; and BEIERSDORF AG, a public<br>limited company, | |
| Defendants.<br>_____/ | |

## CLASS ACTION COMPLAINT

Plaintiff Barbara Truss ("Plaintiff") brings this Class Action Complaint against Defendants

Bayer Healthcare Pharmaceuticals Inc., Bayer Healthcare LLC., Bayer AG, Beiersdorf, Inc.,

Beiersdorf North America, Inc., and Beiersdorf AG (collectively "Defendants"), individually and

on behalf of all others similarly situated, and complain and allege upon personal knowledge as to

herself and her own acts and experiences and, as to all other matters, upon information and belief,

including investigation conducted by her attorneys:

## NATURE OF THE ACTION

1.     This is a civil class action (the "Action") brought by Plaintiff on behalf of all consumers who purchased Coppertone Water Babies (SPF 50) (the "Product") from Defendants for normal, household use. The Product is defective because, undisclosed to consumers, it contains the chemical benzophenone, a known mutagen, carcinogen, and endocrine disruptor. This dangerous chemical is present in the finished Product because the Product is formulated with the chemical octocrylene which over time degrades, resulting in an accumulation of benzophenone.

2.     Over the course of several decades, Defendants gained the trust of consumers, who reasonably believe that Defendants' products, including Coppertone Water Babies (SPF 50), are made with quality materials, and can be used safely, as intended. Defendants formulate, design, manufacture, market, advertise, distribute, and sell the Product to consumers throughout the United States, including in the State of New York. Defendants distribute and sell the Product through various authorized retailers in store and online.

3.     Defendants represent that the Product is safe for its intended use. In reality, the Product contains benzophenone at the time of purchase because the active ingredient octocrylene, degrades into benzophenone.

4.     Benzophenone is a mutagen, carcinogen, and endocrine disruptor.

5.     Feasible alternative formulations, designs and materials, such as mineral-based sunscreen, were available to Defendants at the time the Product was formulated, designed, and manufactured, and such alternative formulations and designs were and are used by other manufacturers to produce and sell non-defective sunscreen.

6.     Plaintiff seeks damages and equitable remedies for herself, and for the proposed Classes.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §

1332 of the Class Action Fairness Act of 2005 because: (1) there are 100 or more putative Class

Members, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest

and costs, and (iii) there is minimal diversity because Plaintiff and Defendants are citizens of

different states. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant

to 28 U.S.C. § 1367.

8.      This Court has personal jurisdiction over Defendants because they have substantial

aggregate contacts with this District, including engaging in conduct that has a direct, substantial,

reasonably foreseeable, and intended effect of causing injury to persons throughout the United

States, and purposely availed themselves of the laws of the United States and the State of New

York.

9.      In accordance with 28 U.S.C. § 1391, venue is proper in this District because a

substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, Defendants

transact business in this District, and Defendants have intentionally availed themselves of the laws

and markets within this District.

## PARTIES

### A.  Plaintiff

10.      Plaintiff Barbara Truss is a resident and citizen of Yonkers, New York who

purchased and used the Product within the relevant time period.

### B.  Defendants

11.      Defendant Bayer HealthCare Pharmaceuticals Inc. is a Delaware corporation with

its principal place of business in Whippany, New Jersey, and was doing business in the State of

New York during all relevant times. Directly and through its agents, Bayer HealthCare Pharmaceuticals has substantial contacts with and receives substantial benefits and income from and through the State of New York. Bayer HealthCare Pharmaceuticals is one of the owners, manufacturers, or distributors of the Product, and is one of the companies that created and/or authorized the false, misleading, and deceptive labeling for the Product.

12.     Defendant Bayer HealthCare LLC is a Delaware company with its principal place of business in Whippany, New Jersey, and was doing business in the state of New York during all relevant times. Directly and through its agents, Bayer HealthCare LLC has substantial contacts with and receives substantial benefits and income from and through the State of New York. Bayer HealthCare LLC is one of the owners, manufacturers, or distributors of the Product, and is one of the companies that created and/or authorized the false, misleading, and deceptive labeling for the Product.

13.     Defendant Bayer AG is the parent company of Defendants Bayer HealthCare Pharmaceuticals Inc. and Bayer HealthCare LLC.

14.     Defendant Beiersdorf, Inc. is a Delaware corporation with its principal place of business in Wilton, Connecticut, and was doing business in the State of New York during all relevant times. Directly and through its agents, Beiersdorf, Inc. has substantial contacts with and receives substantial benefits and income from and through the State of New York. Beiersdorf, Inc. is one of the owners, manufacturers, or distributors of the Product, and is one of the companies that created and/or authorized the false, misleading, and deceptive labeling for the Product.

15.     Defendant Beiersdorf North America, Inc. is a Delaware corporation with its principal place of business in Wilton, Connecticut, and was doing business in the State of New York during all relevant times. Directly and through its agents, Beiersdorf North America, Inc. has

substantial contacts with and receives substantial benefits and income from and through the State of New York. Beiersdorf North America, Inc. is one of the owners, manufacturers, or distributors of the Products, and is one of the companies that created and/or authorized the false, misleading, and deceptive labeling for the Product.

16.     Defendant Beiersdorf AG is the parent company of Defendants Beiersdorf, Inc. and Defendant Beiersdorf North America, Inc.

17.     In September 2019, Bayer AG sold the Coppertone brand, which includes the Product, for $550 million to Beiersdorf AG.[1]

18.     The term "Defendants," as used herein, relates to each individual Defendant during the time period it was responsible for manufacturing, distributing, advertising, labeling, and selling the unlawful Product.

## FACTUAL ALLEGATIONS

### A. Coppertone

19.     Coppertone has been a leader in the sunscreen market since it was founded in 1944.[2]

20.     Coppertone products are sold in the United States as well as Canada and China.[3]

21.     Coppertone products are sold at mass market retailers in the United States, including Walmart and Target, in addition to being sold online at retailers such as Amazon.

22.     Coppertone has consistently positioned itself as "[a] trusted name in sun care" and a brand that "is committed to providing consumers with innovative, quality and safe sun care products based on science, rigorous testing and high standards."[4]

---

[1]    *See*    https://media.bayer.com/baynews/baynews.nsf/id/Bayer-completes-sale-of-iconic-Coppertone-brand-to-Beiersdorf (last visited Sept. 16, 2021).
[2] *See* https://www.beiersdorf.com/brands/coppertone (last visited Sept. 21, 2021).
[3] *Id.*
[4] *See* https://www.coppertone.com/sun-facts/science-and-testing (last visited Sept. 21, 2021).

**B. Chemical Sunscreen**

23.    There are two categories of sunscreen on the market: physical and chemical.

24.    Physical sunscreens work by reflecting the UV rays from the sun, protecting the skin from the harmful rays. These formulations rely on the use of ingredients such as zinc oxide and titanium dioxide to provide this protection. Physical sunscreens create a barrier between the skin and the sun and aren't absorbed into the skin.[5]

25.    Alternatively, chemical-based sunscreen contains various synthetic, chemical active ingredients, including octocrylene, which protect the skin by absorbing ultraviolet ("UV") radiation and dissipating it as heat.

26.    A study published by Frontiers in Medicine noted that research suggested that chemical sunscreens may be absorbed into the bloodstream at a higher rate than previous studies indicated.[6]

27.    Coppertone Water Babies (SPF 50) contains 9% Octocrylene:

---

[5] *See* https://thedermreview.com/octocrylene/ (last visited Sept. 21, 2021).
[6] *See* https://www.frontiersin.org/articles/10.3389/fmed.2019.00195/full (last visited Sept. 21, 2021).

**Drug Facts**

| **Active ingredients** | **Purpose** |
|---|---|
| Avobenzone 3%, Homosalate 9%, Octisalate 4.5%, Octocrylene 9%..................................Sunscreen | |

**Use** ■ helps prevent sunburn

**Warnings**

For external use only

**Do not use** on damaged or broken skin

**When using this product** keep out of eyes. Rinse with water to remove.

**Stop use and ask a doctor if** rash occurs

**Keep out of reach of children.** If product is swallowed, get medical help or contact a Poison Control Center right away.

**Directions** ■ apply liberally 15 minutes before sun exposure ■ reapply: ■ after 80 minutes of swimming or sweating ■ immediately after towel drying ■ at least every 2 hours ■ **Sun Protection Measures.** Spending time in the sun increases your risk of skin cancer and early skin aging. To decrease this risk, regularly use a sunscreen with a Broad Spectrum SPF value of 15 or higher and other sun protection measures including: ■ limit time in the sun, especially from 10 a.m. – 2 p.m. ■ wear long-sleeve shirts, pants, hats, and sunglasses ■ children under 6 months: Ask a doctor

**Other information** ■ protect this product from excessive heat and direct sun ■ may stain or damage some fabrics or surfaces

**Inactive ingredients** water, aloe barbadensis leaf juice, C12-15 alkyl benzoate, neopentyl glycol diheptanoate, butylene glycol, styrene/acrylates copolymer, VP/Eicosene copolymer, 1,2-hexanediol, hydroxyacetophenone, tocopherol, acrylates/C10-30 alkyl acrylate crosspolymer, potassium hydroxide, disodium EDTA

**Questions?** 1-866-288-3330

[7]

**C. Benzophenone**

---

[7] https://www.target.com/p/coppertone-waterbabies-fragrance-free-sunscreen-lotion-spf-50-6-fl-oz/-/A-52033464?ref=tgt_adv_XS000000&AFID=google_pla_df&fndsrc=tgtao&DFA=71700000012510706&CPNG=PLA_Beauty%2BPersonal+Care%2BShopping%7CBeauty_Ecomm_Beauty&adgroup=SC_Health%2BBeauty&LID=700000001170770pgs&LNM=PRODUCT_GROUP&network=g&device=c&location=9013450&targetid=aud-824206566127:pla-895745642360&ds_rl=1246978&ds_rl=1248099&gclid=CjwKCAjw49qKBhAoEiwAHQVTo0jMf4-7ENmz3rni3lvjpOwMnTl6CK6HqydaORND996J4W2jNb3zERoCVkEQAvD_BwE&gclsrc=aw.ds (last visited Oct. 1, 2021).

28.     Benzophenone is associated with a wide range of toxicities, including genotoxicity, carcinogenicity, and endocrine disruption.[8]

29.     Benzophenone is notorious for inducing dermatological pathologies, including contact dermatitis, erythema, urticaria, and photoinduced dermatitis.[9]

30.     Benzophenone exposure can occur by "absorbing benzophenone through the skin and nails from some cosmetic products,"[10] such as Defendants' Product.

31.     The personal care product industry has known for some time that octocrylene is contaminated with benzophenone.

32.     When purchasing raw octocrylene for sunscreen or personal care product manufacturing, the industry admits that benzophenone is a contaminant found in octocrylene and "cannot be removed by its entirety when octocrylene is being processed..."[11]

33.     The presence of benzophenone in food products or food packaging is banned in the United States.[12]

34.     Due to the chemical's ability to cause cancer, benzophenone is included on the California Proposition 65 list.[13]

35.     Under California Proposition 65, there is no safe harbor for benzophenone in any personal care products, including sunscreens, anti-aging creams, and moisturizers.[14]

---

[8] *Id.*

[9] *Id.*

[10] https://www.p65warnings.ca.gov/fact-sheets/benzophenone (last visited Oct. 10, 2021).

[11] *Frequently asked questions: benzophenone and octocrylene California Prop 65 ingredients*, Rodan + Fields, San Francisco, CA. https://www.rodanandfields.com/images/Archives/FAQs_Benzophenone.pdf (last visited Sept. 16, 2021).

[12] C. A. Downs, Joseph C. DiNardo, Didier Stien, Alice M. S. Rodrigues, and Philippe Lebaron, *Benzophenone Accumulates over Time from the Degradation of Octocrylene in Commercial Sunscreen Products,* Chemical Research in Toxicology, 2021 *34* (4), 1046-1054.

[13] https://www.p65warnings.ca.gov/fact-sheets/benzophenone (last visited Oct. 10, 2021).

[14] C. A. Downs, Joseph C. DiNardo, Didier Stien, Alice M. S. Rodrigues, and Philippe Lebaron, *Benzophenone Accumulates over Time from the Degradation of Octocrylene in Commercial Sunscreen Products,* Chemical Research in Toxicology*, 2021 *34* (4), 1046-1054.

36.     In the European Commission's Scientific Committee on Consumer Safety ("SCCS) *Opinion on Octocrylene*, the SCCS stated that "Octocrylene generates benzophenone through a retro-aldol condensation and also that benzophenone was detected in the pure Octocrylene manufactured ingredient."[15]

37.     The SCCS noted that "[b]enzophenone is a hazardous impurity and degradation product of Octocrylene and it should be monitored and kept at trace levels."[16]

**D.  A Study Finds That Benzophenone Accumulates in Octrylene Containing Products**

38.     The source of benzophenone in a product arises from two main sources: (1) benzophenone contamination in the octocrylene used to manufacture the commercial product and (2) accumulation of benzophenone from the degradation of octocrylene as the product ages.[17]

39.     A study revealed that octocrylene in sunscreen products degrades over time and results in the accumulation of benzophenone.[18]

40.     The products tested included Coppertone Sunscreen Spray Water Babies 50, Coppertone Kids Sport SPF 50 Spray, Coppertone Sunscreen Lotion Defend and Care Face Oil Free 50 Lotion, Coppertone Clear Sunscreen Sport Clear 30, Banana Boat Clear Ultra Mist Sport Performance 30, Banana Boat Sport Performance Sunscreen Lotion 50+, Neutrogena Beach Defense Sunscreen Spray 100, and Neutrogena Beach Defense Sunscreen Lotion 70.[19]

---

[15] https://ec.europa.eu/health/sites/default/files/scientific_committees/consumer_safety/docs/scss_o_249.pdf (last visited Oct. 12, 2021).
[16] *Id.*
[17] C. A. Downs, Joseph C. DiNardo, Didier Stien, Alice M. S. Rodrigues, and Philippe Lebaron, *Benzophenone Accumulates over Time from the Degradation of Octocrylene in Commercial Sunscreen Products,* Chemical Research in Toxicology*, 2021 34* (4), 1046-1054.
[18] *Id.*
[19] *Id.*

41.     In this study, the product samples were tested after being purchased directly from the store. They were then subjected to a U.S. FDA accelerated stability testing protocol for 6 weeks, which reflects a single year of shelf life.[20]

42.     Benzophenone was detected in all of the octocrylene-containing sunscreen products but was not detected in the only non-octocrylene product.[21]

43.     Further, Plaintiff commissioned her own independent testing performed by a third-party lab. The results of the test found benzophenone in the Product.

44.      Defendants' sunscreen Product Coppertone Water Babies (SPF 50), are drugs which are adulterated under 21 U.S.C. § 351(a)(1) based upon the presence of benzophenone.

45.     The Federal Food, Drug, and Cosmetic Act (FD&C Act) prohibits "The introduction or delivery for introduction into interstate commerce of any food, drug, or cosmetic that is adulterated or misbranded." 21 U.S.C. § 331(a).

46.     Under the New York Food, Drug and Cosmetic Act, New York has expressly adopted the federal labeling requirements of the Act. The definition of "adulterated" is exactly the same as the FD&C Act under NY Public Health Law §71.05(e). Thus, a violation of federal labeling laws is an independent violation of New York law and actionable as such.

**E.  Defendants' Representations**

47.     Defendants make a significant number of representations regarding the safety of the Product on Coppertone's website, including that certain products are "safe and gentle on a baby's skin" and offer "unbeatable protection."[22]

---

[20] *Id.*
[21] *Id.*
[22] *See* https://www.coppertone.com/ (last visited Sept. 21, 2021).

48.     Parents, like Plaintiff Truss, trust manufacturers like Defendant to sell Product(s) that are safe and free from harmful toxins, contaminants, and chemicals, but rather here, the Product contains benzophenone which is known to have significant and dangerous health consequences.

49.     Coppertone's website also includes an infographic touting the scientific testing performed on the Product:





50.     The Water Babies (SPF 50) label advertises the product as "Hypoallergenic &
Gentle," as shown below:

---

[23] *Id.*



24

51.     Defendants represent on Coppertone's website that they are "committed to quality, excellence, innovation and truth in labeling[.]"[25]

52.     Despite the representation that Defendants are committed to "truth in labeling," nothing on the Product label insinuates, states, or warns that the Product contains benzophenone

---

[24] *See* https://www.coppertone.com/products/coppertone-waterbabies-sunscreen-lotion-spf50-0002001.html (last visited Sept. 21, 2021).
[25] *See* https://www.coppertone.com/sun-facts/science-and-testing (last visited Sept. 21, 2021).

or that the octocrylene in the Product degrades over time and results in an accumulation of benzophenone.

53.    In fact, the Defendants' representations have indicated the Product is "tested" and "safe" for users of the sunscreen:



[26]

## PLAINTIFF'S FACTUAL ALLEGATIONS

**Barbara Truss**

54.    Plaintiff Truss purchased the Coppertone Water Babies (SPF 50) sunscreen in May 2021 at a Walgreens store located in Yonkers, New York.

55.    Nowhere on the packaging did Defendants disclose that the octocrylene in the Product degrades over time and results in an accumulation of benzophenone.

56.    Nowhere on the packaging did Defendants disclose that the Product contains benzophenone at the time of purchase.

57.    If Plaintiff Truss had been aware of the existence and accumulation of benzophenone in the Product, she would not have purchased the Product or would have paid significantly less for the Product.

---

[26] *See* https://www.coppertone.com/sun-facts/science-and-testing (last visited Sept. 21, 2021).

As a result of Defendants' actions, Plaintiff Truss has incurred damages, including economic damages.

58.     Plaintiff and the Classes have suffered injury in fact and have lost money as a result of Defendants' unlawful sale of the Product. Indeed, no reasonable consumer, including Plaintiff, would have purchased the Product had they known they were adulterated and/or misbranded.

59.     Defendants engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from their omissions surrounding benzophenone contamination affecting the Product.

60.     Plaintiff and the Classes have suffered injury in fact and have lost money as a result of Defendants' unlawful sale of the Product. Indeed, no reasonable consumer, including Plaintiff, would have purchased the Product had they known of the material omissions of material facts regarding the presence of Benzophenone. Accordingly, Plaintiff and the Classes suffered injury in fact and lost money as a result of Defendants' misleading representations and omissions and did not receive the benefit-of-the- bargain.

61.     Plaintiff and the Classes' injury is underscored by the fact that numerous other products offering the same therapeutic benefit at comparable prices exist that are not prone to benzophenone contamination.

62.     Plaintiff and the Classes may be harmed again in the future because they want to purchase the Product in the future; however, without injunctive relief Plaintiff would not be able to know or trust that Defendants will truthfully and legally label the Product and would be likely to be misled again.

## CLASS ACTION ALLEGATIONS

63.     Plaintiff brings this action individually and as representatives of all those similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the below-defined Classes:

> **National Class:**   During the fullest period allowed by law, all persons who purchased the Coppertone Water Babies Product for their personal use and not for resale in the United States.

> **New York Subclass:** During the fullest period allowed by law, all persons who purchased the Coppertone Water Babies Product for their personal use and not for resale in the State of New York.

64.     Members of the classes described are referred to as "Class Members" or members of the "Classes."

65.     The following are excluded from the Classes: (1) any Judge presiding over this action and members of his or her family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parent have a controlling interest (as well as current or former employees, officers, and directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

66.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

67.     Plaintiff reserves the right to amend the definitions of the Classes if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

68.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that individual joinder of all Class Members is impracticable. On information and belief, Class Members number in the thousands to millions. The precise number or identification of members of the Classes are presently unknown to Plaintiff but may be ascertained from Defendants' books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

69.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes, which predominate over any questions affecting individual members of the Classes. These common questions of law or fact include, but are not limited to, the following:

a)  Whether the Product contains benzophenone at the time of purchase;

b)  Whether the Product accumulates benzophenone over time;

c)  Whether Defendants omitted or failed to disclose material information to Plaintiff and Class Members regarding the Product;

d)  Whether the Product is defectively designed, formulated, and/or manufactured;

e)  Whether Defendants knew or reasonably should have known about the harmful level of benzophenone in the Product prior to distributing and selling them to Plaintiff and Class Members;

f)  Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product is deceptive;

g)  Whether Defendants' actions violate the consumer protection statutes invoked herein;

h)  Whether Defendants breached the implied warranty of merchantability relating to the Product;

i)  Whether Defendants breached an express warranty to Plaintiff and Class Members;

j)   Whether Defendants were unjustly enriched at the expense of the Plaintiff and Class Members;

k)   Whether Plaintiff and Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

l)   Whether Plaintiff and the other Class Members have been injured and the proper measure of their losses as a result of those injuries; and

m)  Whether Plaintiff and the Class Members are entitled to injunctive, declaratory, or other equitable relief.

70.   Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of herself and the other Class Members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

71.   **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other Class Members, as each class member was subject to the same omission of material fact and misrepresentations regarding the presence of benzophenone in the Product. Plaintiff shares the aforementioned facts and legal claims or questions with Class Members, and Plaintiff and all Class Members have been similarly affected by Defendants' common course of conduct alleged herein.  Plaintiff and all Class Members sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's deceptive omission of material fact and misrepresentations regarding the presence of benzophenone in the Product.

72.   **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Classes because she is a member of the Classes and her interests do not conflict with the interests of the Class Members they seek to represent. Plaintiff

has also retained counsel competent and experienced in complex commercial and class action litigation. Plaintiff and her counsel intend to prosecute this action vigorously for the benefit of all Class Members. Accordingly, the interests of the Class Members will be fairly and adequately protected by Plaintiff and her counsel.

73.     **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).**

Absent a class action, Class Members will continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. Accordingly, the proposed Classes satisfies the requirements of Fed. R. Civ. P. 23(b)(1).

74.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2)**

Defendant has acted or refused to act on grounds generally applicable to Plaintiff and All Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Classes as a whole.

75.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

     a)  The damages suffered by each individual putative Class Member do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct;

     b)  Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

c)  The claims presented in this case predominate over any questions of law or fact affecting individual Class Members;

d)  Individual joinder of all putative Class Members is impracticable;

e)  Absent a class action, Plaintiff and putative Class Members will continue to suffer harm as a result of Defendants' unlawful conduct; and

f)  This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and putative Class Members can seek redress for the harm caused by Defendants.

76.     In the alternative, the Classes may be certified for the following reasons:

a)  The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants;

b)  Adjudications of individual Class and Members' claims against Defendants would, as a practical matter, be dispositive of the interests of other putative Class who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests; and

c)  Defendants have acted or refused to act on grounds generally applicable to the putative Classes, thereby making appropriate final and injunctive relief with respect to the putative Classes as a whole.

**COUNT I**
**Violation of New York General Business Laws § 349**
**(On Behalf Of Plaintiff Truss And The New York Subclass)**

77.     Plaintiff Truss hereby re-alleges and incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

78.     N.Y. Gen. Bus. Law §349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[.]"

79.     Defendants' actions occurred in the conduct of business, trade, or commerce.

80.     Defendants' conduct, as described in this Complaint, constitutes "deceptive acts or practices" within the meaning of the N.Y. Gen. Bus. Law.

81.     Defendants' deceptive acts and practices were intended to mislead consumers in a material way in the process of purchasing Defendants' Products, and a reasonable consumer would be misled by their deceptive acts and practices.

82.     All of Defendants' deceptive acts and practices constitute conduct directed at consumers.

83.     Defendants intended that Plaintiff Truss and each of the other members of the New York Subclass would rely upon their deceptive conduct and false advertising, and consumers, including Plaintiff Truss and putative New York Subclass Members, did in fact rely upon deceptive conduct.

84.     Defendants' foregoing deceptive and unfair acts and practices, including its omissions, were and are deceptive acts or practices in violation of the N.Y. Gen. Bus. Law § 349, Deceptive Acts and Practices, N.Y. Gen. Bus. Law 349, et seq., in that Defendants manufactured, labeled, packaged, marketed, advertised, distributed, and/or sold the Product without any mention of the fact that the Product contains benzophenone.

85.     Defendants' unconscionable, deceptive, and/or unfair practices caused actual damages to Plaintiff and the New York Subclass Members who were unaware that the Product contained benzophenone.

86.     As a direct and proximate result of Defendants' deceptive acts and practices, including its omissions, Plaintiff Truss and New York Subclass Members have been damaged as alleged herein and are thus entitled to recover actual damages to the extent permitted by law in an amount to be proven at trial.

87.     In addition, Plaintiff Truss and New York Subclass Members seek equitable and injunctive relief against Defendants on terms that the Court considers reasonable, in addition to reasonable attorneys' fees and costs.

88.     In addition, Defendants' conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

**COUNT II**
**Violation of New York General Business Laws § 350**
**(On Behalf Of Plaintiff Truss And The New York Subclass)**

89.     Plaintiff Truss hereby re-alleges and incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

90.     N.Y. Gen. Bus. Law §350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service[.]"

91.     Defendants' actions occurred in the conduct of business, trade, or commerce.

92.     Defendants' foregoing acts and practices, including their advertising, were directed at consumers.

93.     Defendants' conduct, as described in the Complaint, constitutes "false advertising" within the meaning of the N.Y. Gen. Bus. Law §350, as Defendants publicly disseminating misleading false advertisements through advertising and marketing the Product, failing to disclose that the Product contains benzophenone.

94.     Defendants' foregoing, consumer-oriented, unfair or deceptive acts and practices, including its advertising, representations, and omissions, constitutes false and misleading advertising in a material way in violation of the N.Y. Gen. Bus. Law § 350.

95.     Defendants' false, misleading, and deceptive advertising and representations include misrepresenting and misleadingly marketing and labeling the Product was fit for their

intended purpose of safely protecting consumers from UV exposure and omitting and failing to disclose that the Product contains benzophenone.

96.     Defendants' false, misleading, and deceptive advertising and representations of fact were and are directed at consumers.

97.     Defendants' false, misleading, and deceptive advertising and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

98.     Defendants' false, misleading, and deceptive advertising and representations of fact have resulted in consumer injury or harm to the public interest.

99.     Defendants intended that Plaintiff Truss and the other members of the New York Subclass would rely upon their deceptive conduct and false advertising, and a reasonable person would in fact be misled by this deceptive conduct. Defendants engaged in misleading and deceptive advertising that failed to disclose that the Product contains benzophenone.  Defendants chose to label the Product in this way to impact consumer choices and gain market dominance, as they are aware that all consumers who purchased the Product would be unwilling or less likely to buy the Product if those consumers knew the Product contained benzophenone.  Thus, Defendants' advertising and labeling was an unfair, untrue, and misleading practice.

100.     Consumers, including Plaintiff Truss and New York Subclass members either would not have purchased the Product or would have paid less for them had the known that the Product contains benzophenone.

101.     As a direct and proximate result of Defendants' deceptive acts and practices, including their use or employment of false advertising, Plaintiff Truss and each of the other members of the New York Subclass have sustained actual damages in an amount to be proven at trial.

102.     In addition, Plaintiff Truss and New York Subclass members seek equitable and injunctive relief against Defendants on terms that the Court considers reasonable, in addition to reasonable attorneys' fees and costs.

103.     In addition, Defendants' conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

**COUNT III**
**Breach of Express Warranty**
**(On Behalf of the National Class and,**
**alternatively, the New York Subclass)**

104.     Plaintiff hereby re-allege and incorporate all allegations contained in the preceding paragraphs as if fully set forth herein.

105.     Plaintiff, and each member of the Classes, formed a contract with Defendants at the time Plaintiff and each member of the Classes purchased the Product.

106.     The terms of the contract include the promises and affirmations of fact made by Defendants on the Product's packaging and through marketing and advertising, as described above.

107.     This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiff and the members of the Classes and Defendants.

108.     As set forth above, Defendants purport through its advertising, labeling, marketing, and packaging, to create an express warranty that the Product is safe for its intended use.

109.     Plaintiff and the members of the Classes performed all conditions precedent to Defendants' liability under this contract when they purchased the Product.

110.     Defendants breached express warranties about the Product and their qualities because Defendants' Product contained the harmful chemical benzophenone at the time of

purchase and that the chemical octocrylene degrades over time resulting in an accumulation of benzophenone and the Product does not conform to Defendants' affirmations and promises described above.

111.    Plaintiff and each of the members of the Classes would not have purchased the Product had they known the true nature of the harmful chemical in the Product.

112.    As a result of Defendants' breach of warranty, Plaintiff and each of the members of the Classes have been damaged in the amount of the purchase price of the Product and any consequential damages resulting from their purchases.

**COUNT IV**
**Breach of Implied Warranty**
**(On Behalf of the National Class and,**
**alternatively, the New York Subclass)**

113.    Plaintiff hereby re-alleges and incorporates all allegations contained in the preceding paragraphs as if fully set forth herein.

114.    Defendant provided Plaintiff and Class Members with implied warranties that the Product was merchantable and fit for the ordinary purposes for which it was sold, i.e. that it was free of benzophenone.

115.    Defendant marketed, sold, and/or distributed the Product, and Plaintiff and other Class Members purchased the Product.

116.    Plaintiff brings this claim for breach of the implied warranty of merchantability on behalf of herself and other consumers who purchased the Product with the expectation of the Product not containing the dangerous chemical benzophenone.

117.    The Defendant has breached the implied warranties of merchantability that they made to Plaintiff and the prospective class. For example, Defendants impliedly warranted that the

Product was free from defects, that they were merchantable, and that they were fit for the ordinary purpose for which sunscreen is used.

118.    When sold by Defendant, the Product was not merchantable, did not pass without objection in the trade, was not of adequate quality within that description, was not fit for the ordinary purposes for which such goods are used, and did not conform to the promises or affirmations of fact made on the container or label.

119.    As a result of Defendants' breaches of implied warranties, Class members did not receive the benefit of their bargain and suffered damages at the point of sale stemming from their overpayment for the  Product that contained benzophenone.

120.    As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiff and the other class members have been damaged in an amount to be proven at trial.

## COUNT V
## Unjust Enrichment
**(In the Alternative To Count I And On Behalf of the National Class and, alternatively, the New York Subclass)**

121.    Plaintiff hereby re-allege and incorporate all allegations contained in the preceding paragraphs as if fully set forth herein.

122.    Plaintiff and the other members of the Classes conferred benefits on Defendants by purchasing the Product.

123.    Defendants have been unjustly enriched in retaining the revenues derived from the purchase of the Product by Plaintiff and the other members of the Classes.

124.    Retention of those monies under these circumstances is unjust and inequitable because Defendants' labeling of the Product was misleading to consumers, which caused injuries

to Plaintiff and the other members of the Classes because they would have not purchased the Product if Defendants had disclosed that the Product contained benzophenone.

125.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and the other members of the Classes is unjust and inequitable, Defendants must pay restitution to Plaintiff and the other members of the Classes for their unjust enrichment, as ordered by the Court.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class Members, pray for judgment and relief against Defendants as follows:

a) For an order declaring: (i) this is a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Classes described herein; and (ii) appointing Plaintiff to serve as representatives for the Classes and Plaintiff's counsel to serve as Class Counsel;

b) For an order enjoining Defendants from continuing to engage in the unlawful conduct set forth herein;

c) For an order awarding restitution of the monies Defendants wrongfully acquired by its illegal and deceptive conduct;

d) For an order requiring disgorgement of the monies Defendants wrongfully acquired by its illegal and deceptive conduct;

e) For compensatory and punitive damages, including actual and statutory damages, arising from Defendants' wrongful conduct and illegal conduct;

f) For an award of reasonable attorneys' fees and costs and expenses incurred in the course of prosecuting this action; and

g) For such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated: November 23, 2021

Respectfully submitted,

*s/ Mitchell M. Breit*
Mitchell M. Breit
Blake Hunter Yagman*
*mbreit@milberg.com*
*byagman@milberg.com*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
405 East 50th Street
New York, New York 10022
Tel.:   (212) 594-5300

Jennifer Czeisler
*jczeisler@milberg.com*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel.:   (865) 247-0080
Fax:    (865) 522-0049

Nick Suciu, III*
*nsuciu@milberg.com*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel.:   (313) 303-3472
Fax:    (865) 522-0049

Virginia Ann Whitener*
Russell Busch*
*gwhitener@milberg.com*
*rbusch@milberg.com*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel.:   (865) 247-0080
Fax:    (865) 522-0049

**Pro Hac Vice* Application
Forthcoming

*Attorneys for Plaintiff*