## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK
## WHITE PLAINS DIVISION

| | |
|---|---|
| BARBARA TRUSS, NATALIA GOLSON, JACK KILGORE, and GABRIELA PETTIBONE, individually and on behalf of all others similarly situated, | Case No. 7:21-cv-09845 |
| Plaintiffs, | SECOND AMENDED CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| BAYER HEALTHCARE PHARMACEUTICALS INC., a Delaware Corporation; BAYER HEALTHCARE LLC, a Delaware limited liability company; BEIERSDORF, INC., a Delaware Corporation; and BEIERSDORF NORTH AMERICA, INC., a Delaware Corporation, | |
| Defendants. | |
| _____/ | |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs Barbara Truss, Natalia Golson, Jack Kilgore, and Gabriela Pettibone (collectively "Plaintiffs"), through counsel, bring this Class Action Complaint against Defendants Bayer Healthcare Pharmaceuticals Inc., Bayer Healthcare LLC, Beiersdorf, Inc., and Beiersdorf North America, Inc. (collectively "Defendants"), individually and on behalf of all others similarly situated, and complain allege upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys:

## NATURE OF THE ACTION

1.      This is a civil class action lawsuit (the "Action") concerning Defendants' design, manufacture, distribution, labeling, market, and sale of Coppertone Water Babies (SPF 50) (the "Product") which Defendants promote and market as "hypoallergenic," "dermatologically tested," and "gentle on baby's skin."

2.      Despite these representations, and undisclosed to consumers, the Product is contaminated with and contains benzophenone, a known mutagen, carcinogen, allergen, and endocrine disruptor that is not FDA approve as an active ingredient in sunscreen products.[1] The Product's benzophenone contamination renders the Product mislabeled, misbranded, adulterated, and defective.

3.      Defendants gained the trust of consumers over the course of several decades, and consumers, including the Plaintiffs, reasonably relied on and believed Defendants' statements and representations that Coppertone Water Babies (SPF 50) was made with quality materials and safe for its intended purpose—hypoallergenic and gentle protection from UVA/UVB rays.

4.      Consumers, including the Plaintiffs, paid a premium for Defendants' Product as a result of Defendants' statements and representations that Coppertone Water Babies (SPF 50) is hypoallergenic and gentle, and a Product formulated for individuals with sensitive skin, and/or formulated specifically for young children.

5.       Defendants had a duty to monitor the Product and the Product's ingredients for contamination,  and/or to identify potential contamination risk. Similarly, Defendants had a duty

---

[1] The American Chemistry Council, through its website www.ChemicalSafetyFacts.org, suggests that benzophenone is generally approved for use in sunscreens, stating, "The U.S. Food and Drug Administration (FDA) has approved benzophenone-3 (BP3), also known as oxybenzone, as an active ingredient in sunscreen." https://www.chemicalsafetyfacts.org/benzophenone/ (last accessed Apr. 19, 2022).  However, this statement is misleading to the ordinary consumer because it overlooks the fact that there are several distinct benzophenone compounds that are not FDA approved. Moreover, consumers would not expect the Product to contain benzophenone-3 because Coppertone Waterbabies Label and Defendants' website states that the Product is "Free of Oxybenzone."

to ensure that the chemicals contained in the Product were included in the Product's ingredients list. This is especially true since Defendants promote the Product as suitable for young children and individuals with special dermatological concerns.

6.     Plaintiffs seek damages and equitable remedies for themselves, and for the proposed Classes.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (1) there are 100 or more putative Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiffs and Defendants are citizens of different states. This Court has supplemental jurisdiction over Plaintiffs state law claims pursuant to 28 U.S.C. § 1367.

8.     This Court has personal jurisdiction over Defendants because they have substantial aggregate contacts with this District, including engaging in conduct that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and purposely availed themselves of the laws of the United States and the State of New York.

9.     In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this District, Defendants transact business in this District, and Defendants have intentionally availed themselves of the laws and markets within this District.

## PARTIES

### A.  Plaintiffs

10.     Plaintiff Barbara Truss is a resident and citizen of Yonkers, New York who purchased and used the Product within the relevant time period.

11.     Plaintiff Natalia Golson is a resident and citizen of Blythe, California who purchased and used the Product within the relevant time period.

12.     Plaintiff Jack Kilgore is a resident and citizen of Ceres, California who purchased and used the Product within the relevant time period.

13.     Plaintiff Gabriela Pettibone is a resident and citizen of Los Angeles, California who purchased and used the Product within the relevant time period.

### B.  Defendants

14.     Defendant Bayer HealthCare Pharmaceuticals Inc. is a Delaware corporation with its principal place of business in Whippany, New Jersey, and was doing business in the State of New York and the State of California during all relevant times. Directly and through its agents, Bayer HealthCare Pharmaceuticals has substantial contacts with and receives substantial benefits and income from and through the State of New York and the State of California. Bayer HealthCare Pharmaceuticals is one of the owners, manufacturers, or distributors of the Product, and is one of the companies that created and/or authorized the false, misleading, and deceptive labeling, marketing, and advertising for the Product.

15.     Defendant Bayer HealthCare LLC is a Delaware company with its principal place of business in Whippany, New Jersey, and was doing business in the states of New York and California during all relevant times. Directly and through its agents, Bayer HealthCare LLC has substantial contacts with and receives substantial benefits and income from and through the State

of New York and the State of California. Bayer HealthCare LLC is one of the owners, manufacturers, or distributors of the Product, and is one of the companies that created and/or authorized the false, misleading, and deceptive labeling, marketing, and advertising for the Product.

16.     Defendant Beiersdorf, Inc. is a Delaware corporation with its principal place of business in Wilton, Connecticut, and was doing business in the states of New York and California during all relevant times. Directly and through its agents, Beiersdorf, Inc. has substantial contacts with and receives substantial benefits and income from and through the states of New York and California. Beiersdorf, Inc. is one of the owners, manufacturers, or distributors of the Product, and is one of the companies that created and/or authorized the false, misleading, and deceptive labeling, marketing, and advertising for the Product.

17.     Defendant Beiersdorf North America, Inc. is a Delaware corporation with its principal place of business in Wilton, Connecticut, and was doing business in the states of New York and California during all relevant times. Directly and through its agents, Beiersdorf North America, Inc. has substantial contacts with and receives substantial benefits and income from and through the states of New York and California. Beiersdorf North America, Inc. is one of the owners, manufacturers, or distributors of the Products, and is one of the companies that created and/or authorized the false, misleading, and deceptive labeling, marketing, and advertising for the Product.

18.     The term "Defendants," as used herein, relates to each individual Defendant, including Bayer HealthCare Pharmaceuticals Inc., Bayer HealthCare LLC, Beiersdorf, Inc., and Beiersdorf North America, Inc., during the time period it was responsible for manufacturing, distributing, advertising, labeling, and selling the unlawful Product.

## FACTUAL ALLEGATIONS

### A. Coppertone Waterbabies SPF 50

19.     Since 1944, Coppertone has been a lead manufacturer of sunscreen products, and Coppertone-brand sunscreens are currently sold in the United States and other major countries.[2]

20.     Coppertone has consistently positioned itself as "[a] trusted name in sun care" and a brand that "is committed to providing consumers with innovative, quality and safe sun care products based on science, rigorous testing and high standards."[3]

21.     Coppertone Waterbabies SPF 50 is available for purchase online and in thousands of retail locations throughout the United States, including Walmart, Walgreens, and Rite-Aid.

22.     The Product, which is a chemical sunscreen,[45] is formulated with several active ingredients, including avobenzone (3%), homosalate (9%), octisalate (4.5%), and octocrylene (9%).

23.     The Product contains benzophenone,[6] and Defendants are plainly on notice of this fact given prior Proposition 65 litigation dating back to as earlier as 2015.[7] Nonetheless, Defendants failed to include benzophenone in the Product's active ingredients list and inactive ingredients list.

---

[2] *See* https://www.beiersdorf.com/brands/coppertone (last visited Sept. 21, 2021).

[3] *See* https://www.coppertone.com/sun-facts/science-and-testing (last visited Sept. 21, 2021).

[4] "The key difference between these types of sunscreens lies in how they block rays. Physical (mineral) sunscreens sit on the surface of your skin and act as a shield, while chemical sunscreens sink into your skin and act more like a sponge." https://www.healthline.com/health/physical-vs-chemical-sunscreen (last visited Feb. 22, 2022).

[5] Recent research suggests that chemical sunscreens may be absorbed into the bloodstream at a higher rate than previous studies indicated. *See* https://www.frontiersin.org/articles/10.3389/fmed.2019.00195/full (last visited Sept. 21, 2021).

[6] Plaintiffs commissioned independent testing of the Product, which was performed by a third-party lab. The results of the test found benzophenone in the Product.

[7] Defendants have received several Proposition 65 Notice Letters notifying them that their sunscreen products formulated with octocrylene contain benzophenone and have settled claims related to this issue. https://oag.ca.gov/prop65/60-Day-Notice-2015-00223 (last accessed Mar. 30, 2022). Defendants' received an additional Notice Letter alerting them to Product's benzophenone contamination on July 1, 2021. https://oag.ca.gov/system/files/prop65/notices/2021-01588.pdf (last accessed Apr. 20, 2022).

24.     Pursuant to FDA regulations, Defendants have an ongoing duty to disclose ingredients in Defendants' products, including the benzophenone that is in Coppertone Waterbabies SPF 50. However, benzophenone is not FDA approved as an active ingredient in sunscreen.

25.     The product is adulterated under 21 U.S.C. § 351(a)(1) and Defendants have violated the Federal Food, Drug, and Cosmetic Act (FD&C Act) which prohibits "[t]he introduction or delivery for introduction into interstate commerce of any food, drug, or cosmetic that is adulterated or misbranded." 21 U.S.C. § 331(a).

26.     Under the New York Food, Drug and Cosmetic Act, New York has expressly adopted the federal labeling requirements of the FD&C Act. The definition of "adulterated" is identical to the FD&C Act under NY Public Health Law §71.05(e). Thus, Defendants' violation of federal labeling laws constitutes an independent and actionable violation of New York law.

27.     The California Sherman Law also adopts the FD&C Act's federal labeling requirements. Accordingly, Defendants' violation of federal labeling laws constitutes an independent and actionable violation of California's laws.

**B. Defendants' Statements, Representations, & Marketing Efforts**

28.     Defendants repeatedly represent that Coppertone Waterbabies SPF 50 is: (1) designed and formulated specifically for babies, (2) rigorously tested for allergens and safety concerns, and (3) hypoallergenic and gentle.

29.     The Product's webpage reassures consumers that they can trust Coppertone and unequivocally states that the Product is intended for babies:

> From the #1 pediatrician recommended sunscreen brand, Coppertone WaterBabies sunscreen is hypoallergenic and gentle. This sunscreen lotion **protects your baby's skin** from the sun with a gentle water resistant sunscreen (80 minutes) formula that's **dermatologically tested and free of PABA, dyes, Octinoxate and**

**Oxybenzone.** This Coppertone **sunscreen for babies** delivers Broad Spectrum SPF 50 UVA/UVB protection, and **this baby sunscreen lotion formula is gentle on babies skin.** Coppertone WaterBabies sunscreen **protects baby's skin** from up to 98% of the sun's most damaging UV rays. Apply Coppertone Waterbabies sunscreen SPF 50 lotion to your **baby's skin** whenever the fun takes you outside, whether it's a day at the beach or playing at the pool. Coppertone is voted the **most trusted sunscreen brand** and each sunscreen Coppertone creates follows **a tradition of trusted, quality sun protection products.** Use and reapply Coppertone WaterBabies Sunscreen as directed.[8]

30.    Similarly, the Products' front label states that it is "hypoallergenic," "free of oxybenzone, octinoxate, dyes, & PABA," and from the "#1 Pediatrician Recommended Sunscreen Brand."[9]

31.    Defendants' website also includes an infographic, entitled "The Coppertone Standard," which thoroughly describes "The Steps for Product Quality, Safety, and Efficacy," and states that Defendants' products, including Coppertone Water Babies (SPF 50), "exceed FDA safety testing requirements" and "comply with numerous global standards for SPF and UVA protection."[10]

32.    Defendants also claim to "engage independent investigators, dermatologists, pediatricians, and scientists to evaluate safety and efficacy" of Coppertone's products and further state that Defendants are "committed to quality, excellence, innovation and truth in labeling[.]"[11]

33.    Despite these representations and Defendants purported commitment to "truth in labeling," nothing on the Product's label insinuates, states, or warns that the Product contains benzophenone.

---

[8] https://www.coppertone.com/products/coppertone-waterbabies-sunscreen-lotion-spf50-0002001.html (last visited Apr. 18, 2022).
[9] Oxybenzone, which is also known as benzophenone-3, is FDA-approved as an active ingredient in sunscreens, but many consumers actively avoid this ingredient due to concerns over reef safety, potential allergic reactions, and general safety concerns.
[10] https://www.coppertone.com/sun-facts/science-and-testing (last visited Feb. 23, 2022).
[11] *See* https://www.coppertone.com/sun-facts/science-and-testing (last visited Sept. 21, 2021).

34.    The Product's benzophenone contamination also negates Defendants' claim that its "testing, quality and safety methods go above and beyond what's required." (*See* image below)



35. The Product's label also represents that the Product is "Hypoallergenic & Gentle," but it contains benzophenone which is widely regarded as an allergen and skin irritant.[13] Similarly, Defendants' claim that the Product is "photostable" is undermined by the Product's benzophenone contamination.[14]

36.    Plaintiffs and consumers reasonably relied on Defendants' representations and believed, based on those representations, that the Product was: (1) safe for its intended use, (2) hypoallergenic, gentle, and safe for baby's skin, and (3) free from harmful toxins, contaminants, undisclosed chemicals, and undisclosed allergens. Defendants' representations were misleading to Plaintiffs and consumers because the Product contains benzophenone. Moreover, had the Products undergone the rigorous testing and evaluation described in Defendants' affirmative representations, the Products' benzophenone contamination would have been detected.

---

[12] *Id.*
[13] https://journals.lww.com/dermatitis/Fulltext/2014/01000/Benzophenones.2.aspx (last visited Feb. 23, 2022).
[14] The source of the Product's benzophenone contamination is unclear at this, but some studies suggest that benzophenone accumulates over time as the active ingredient octocrylene degrades and breaks down. If this the case, then additional testing may demonstrate that, contrary to Defendants' claims, the Product is not photostable.

**C. Benzophenone, A Known Endocrine Disruptor and Carcinogen, is not Hypoallergenic.**

37.     Benzophenone is associated with a wide range of toxicities, including genotoxicity, carcinogenicity, and endocrine disruption.[15] It is also notorious for inducing dermatological pathologies, including contact dermatitis, erythema, urticaria, and photoinduced dermatitis.[16]

38.     Furthermore, benzophenone is not hypoallergenic:

Benzophenones are ultraviolet light filters that have been documented to cause a myriad of adverse cutaneous reactions, including contact and photocontact dermatitis, contact and photo contact urticaria, and anaphylaxis. In recent years, they have become particularly well known for their ability to induce allergy and photoallergy. Topical sunscreens and other cosmetics are the sources of these allergens in most patients, but reports of reactions secondary to use of industrial products also exist. Benzophenones as a group have been named the American Contact Dermatitis Society's Allergen of the Year for 2014 to raise awareness of both allergy and photoallergy to these ubiquitous agents.[17]

39.     In California, "[b]enzophenone is on the Proposition 65 list because it can cause cancer," and there is no "safe harbor" for benzophenone in any personal care products, including sunscreens, anti-aging creams, and moisturizers. [18] Stated differently, manufacturers are always required to provide an adequate warning to consumers when a product contains benzophenone, and this rule applies even when the overall concentration of benzophenone is relatively low.

40.     Benzophenone "[e]xposure may occur by using consumer products that contain benzophenone. . . such as lotions, soaps, and body washes, some cosmetics such as nail polish, and some scented air freshening products."[19] "During pregnancy, benzophenone can pass from mother to baby."[20]

---

[15] *C. A. Downs, Joseph C. DiNardo, Didier Stien, Alice M. S. Rodrigues, and Philippe Lebaron, Benzophenone Accumulates over Time from the Degradation of Octocrylene in Commercial Sunscreen Products, Chemical Research in Toxicology, 2021 34 (4), 1046-1054.*
[16] *Id.*
[17] https://journals.lww.com/dermatitis/Fulltext/2014/01000/Benzophenones.2.aspx (last visited Feb. 23, 2022).
[18] https://www.p65warnings.ca.gov/fact-sheets/benzophenone (last visited Feb. 22, 2022).
[19] *Id.*
[20] *Id.*

41.     The European Commission's Scientific Committee on Consumer Safety has stated that "[b]enzophenone is a hazardous impurity and degradation product of octocrylene and it should be monitored and kept at trace levels."[21]

42.     Defendant knew that the Product suffered from, or was likely to suffer from, contamination but nonetheless concealed that fact all while marketing the Product as hypoallergenic, gentle, and safe for babies.

43.     Plaintiffs provided Defendants with written notice of each Plaintiffs claims—including claims arising under the CLRA and warranty claims—on multiple occasions. (See Plaintiffs' Notice Letters attached as Exhibit B and Exhibit C).

## PLAINTIFFS' FACTUAL ALLEGATIONS

**Barbara Truss**

44.     Plaintiff Truss ("Truss") purchased the Coppertone Water Babies (SPF 50) sunscreen in May of 2021 at a Walgreens store located in Yonkers, New York for ordinary household use.

45.     Truss always seeks out products with hypoallergenic formulas because she and other members of her family have eczema, an atopic dermatitis. As a result of this atopic dermatitis, Truss always reads and reviews products' labels prior to purchasing them to ensure the safety of her family.

46.     In choosing a sunscreen lotion, Truss sought a product that was safe, reliable, and well-suited for her unique needs. Additionally, Truss wanted a versatile option that her children, nieces, nephews, and other family member could safely use without the risk of undisclosed skin allergens. Truss read all of the Product's label and packaging prior to purchasing it, and

---

[21] https://ec.europa.eu/health/sites/default/files/scientific_committees/consumer_safety/docs/sccs_o_249.pdf (last visited Oct. 12, 2021).

Defendants' representations that the Product was hypoallergenic, gentle, and safe for babies led her to select the Product over cheaper alternatives that did not make similar claims.

47.    Unbeknownst to Truss, the Product was contaminated with benzophenone at the time of purchase. The Product's packaging did not disclose the presence of benzophenone, and Truss could not have reasonably discovered that it was in the Product.

48.    Truss used the Product as directed, as did her daughter, nieces, nephews, and other family members. Shortly thereafter, and as a result of using the Product as directed, Truss noticed dryness and skin flaking that she felt was not attributable to ordinary sun exposure or sunburns.

49.    If Truss had been aware that the Product was not hypoallergenic or safe and gentle for babies, she would not have purchased the Product or would have paid significantly less for it.

50.    The Product's safety was material to Truss, and she believed Defendants could be trusted to disclose any potential safety risks to consumers and monitor the Product for contamination risks and harmful chemicals.

51.    As a result of Defendants' actions, Truss has incurred damages, including economic damages.

52.    In addition to the available legal remedies, Truss also seeks equitable relief because she desires to purchase the Product in the future but cannot do so unless Defendants' statements and the Product's packaging accurately reflect the ingredients that are contained in the Product and the Product is in fact safe, gentle, hypoallergenic, and free of undisclosed ingredients.

**Natalia Golson**

53.    Plaintiff Golson ("Golson") purchased the Coppertone Water Babies (SPF 50) sunscreen in February or March of 2021 at a Rite-Aid Store located in Blythe, California for regular household use.

54.    Golson's daughters, ages two and three, have sensitive skin, and as a result, Golson regularly seeks out hypoallergenic products in an effort to avoid rashes and related dermatological skin problems.

55.    Golson read the Product's label and packaging prior to purchasing the Product and specifically recalls selecting the Product based off Defendants statement that it was hypoallergenic and suitable for babies. Golson reasonably believed that the Product was free from allergens and

56.    Unbeknownst to Golson, the Product suffered from benzophenone contamination at the time of purchase. The Product's packaging did not disclose the presence of benzophenone, and Golson could not have reasonably discovered that benzophenone was in the Product.

57.    Golson used the Product as intended, applying it to herself and her daughters. Shortly thereafter, Golson noticed that the Product had caused changes to her daughters' skin, and both children experienced dryness and itching that was atypical of ordinary sun exposure.

58.    If Golson had been aware that the Product was not hypoallergenic or safe and gentle for babies, she would not have purchased the Product or would have paid significantly less for it.

59.    The Product's safety was material to Golson, and she believed Defendants could be trusted to disclose any potential safety risks to consumers and monitor the Product for contamination risks and harmful chemicals.

60.    As a result of Defendants' actions, Golson has incurred damages, including economic damages.

61.    In addition to the available legal remedies, Golson also seeks equitable relief because she desires to purchase the Product in the future but cannot do so unless Defendants' statements and the Product's packaging accurately reflect the ingredients that are contained in the Product and the Product is in fact safe, gentle, hypoallergenic, and free of undisclosed ingredients.

**Jack Kilgore**

62.     Plaintiff Kilgore ("Kilgore") purchased approximately 24 bottles of Coppertone Water Babies (SPF 50) sunscreen in August of 2021 at a Walmart located in Modesto, California for regular household use.

63.     In making his purchase decision, Kilgore was adamant about finding a sunscreen product that would be safe and suitable for himself, his children, and his five grandchildren who ranged in age from 4 to 8 years.

64.     Kilgore read the Product's labels and packaging prior to purchase and chose to purchase the Product based on Defendants' representation that it was hypoallergenic, gentle, and safe for babies.

65.     Kilgore was willing to pay, and did pay, a price premium for the Product because he believed it was a good choice for his grandchildren. More specifically, Defendants' statements that the Product was hypoallergenic, gentle, and safe for babies led Kilgore to choose the Product over cheaper alternatives he reviewed at Walmart at his time of purchased which did not make similar claims.

66.     At the time of purchase, Kilgore reasonably relied on Defendants' representations about the Product and believed Defendants were a reputable, reliable, and trustworthy sunscreen manufacturer. The Product's safety was material to Kilgore, and he believed Defendants could be trusted to disclose any potential safety risks to consumers and monitor the Product for contamination risks and harmful chemicals.

67.     Unbeknownst to Kilgore, the Product suffered from benzophenone contamination at the time of purchase. The Product's packaging did not disclose the presence of benzophenone, and Kilgore could not have reasonably discovered that it was in the Product.

68.     Kilgore used the Product as directed, liberally applying it to his granddaughter and grandsons prior to sun exposure. Shortly thereafter, Plaintiff Kilgore's granddaughter began crying and indicated that the skin on her arm was burning. When. Kilgore's grandsons made similar complaints, he realized the severity of the issue and took all three children the emergency room. When  Kilgore described what had happened, the treating physician diagnosed the children with chemical burns and prescribed a topical ointment to be applied over the course of several days.

69.     If  Kilgore had been aware that the Product was not hypoallergenic or safe and gentle for babies, he would not have purchased the Product or would have paid significantly less for it.

70.     As a result of Defendants' actions,  Kilgore has incurred damages, including economic damages.

71.     In addition to the available legal remedies, Kilgore also seeks equitable relief because he desires to purchase the Product in the future but cannot do so unless Defendants' statements and the Product's packaging accurately reflect the ingredients that are contained in the Product and the Product is in fact safe, gentle, hypoallergenic, and free of undisclosed ingredients

**Gabriela Pettibone**

72.     Plaintiff Pettibone ("Pettibone") purchased the Coppertone Water Babies (SPF 50) sunscreen in or around May of 2021 at a Walmart located in Los Angeles, California for regular household use.

73.     Pettibone regularly seeks out products that are hypoallergenic and is willing to pay a price premium for these types of products because she wishes to avoid harsh chemicals and allergens. Pettibone describes herself as someone who "habitually reviews product labels and

ingredients lists" in the hopes of avoiding ingredients that cause negative short-term or long-term health side effects.

74.    In selecting a sunscreen lotion, Pettibone sought a product that was safe for herself and her three-year-old son. Pettibone's son has eczema, and as a result was adamant about finding a product that would not cause eczema flare-ups or related side effects.

75.    Pettibone reviewed the Product's labels and ingredients list prior to purchasing Coppertone Waterbabies SPF 50. Defendants' representation that the Product was hypoallergenic, gentle, and safe for babies led Plaintiff Pettibone to select Coppertone Waterbabies SPF 50 over cheaper alternatives that did not make such claims.

76.    Unbeknownst to Pettibone, the Product suffered from benzophenone contamination at the time of purchase. The Product's packaging did not disclose the presence of benzophenone, and Pettibone could not have reasonably discovered that benzophenone was in the Product.

77.    Pettibone used the Product as directed and applied it to herself and her son. As someone who purposefully seeks out Products with the highest available SPF protection, Pettibone felt that the Product failed to provide an adequate or expected level of sun protection. Moreover, Pettibone's son experienced a rash and skin bumps as a result of using the Product—the exact result Pettibone hoped to avoid when she selected a Product that was purported to be hypoallergenic

78.    If Pettibone had been aware that the Product was not hypoallergenic or safe and gentle for babies, she would not have purchased the Product or would have paid significantly less for it.

79. The Product's safety was material to Pettibone, and she believed Defendants could be trusted to disclose any potential safety risks to consumers and monitor the Product for contamination risks and harmful chemicals.

80. As a result of Defendants' actions, Pettibone has incurred damages, including economic damages.

81. In addition to the available legal remedies, Pettibone also seeks equitable relief because she desires to purchase the Product in the future but cannot do so unless Defendants' statements and the Product's packaging accurately reflect the ingredients that are contained in the Product and the Product is in fact safe, gentle, hypoallergenic, and free of undisclosed ingredients.

82. Plaintiffs and members of the proposed classes have suffered injury in fact and have lost money as a result of Defendants' unlawful sale of the Product. No reasonable consumer, including Plaintiffs, would have purchased the Product if they had known that it was adulterated and/or misbranded.

83. Defendants engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct by omitting material facts about the Product's ingredients and the benzophenone contamination affecting the Product.

84. Plaintiffs and members of the proposed classes have suffered injury in fact and have lost money as a result of Defendants' unlawful sale of the Product. Indeed, no reasonable consumer, including Plaintiffs, would have purchased the Product had they known of the material omissions of material facts regarding the presence of Benzophenone. Accordingly, Plaintiffs and the Classes suffered injury in fact and lost money as a result of Defendants' misleading representations and omissions and did not receive the benefit-of-the- bargain.

85.     Plaintiffs' injuries are underscored by the fact that alternative sunscreen products offer the same therapeutic benefit at comparable prices but do not suffer from benzophenone contamination and do not expose consumers to known health risks associated with this harmful chemical.

86.     Plaintiffs and the Classes may be harmed again in the future because they want to purchase the Product in the future; however, without injunctive relief Plaintiffs would not be able to know or trust that Defendants will truthfully and legally label the Product and would be likely to be misled again.

## CLASS ACTION ALLEGATIONS

87.     Plaintiffs bring this action individually and as representatives of all those similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the below-defined Classes (cumulatively "Class Members"):

> **National Class ("National Class"):**  During the fullest period allowed by law, all persons who purchased the Coppertone Water Babies Product for their personal use and not for resale in the United States.

> **New York Subclass ("New York Subclass"):** During the fullest period allowed by law, all persons who purchased the Coppertone Water Babies Product for their personal use and not for resale in the State of New York.

> **California Subclass ("California Subclass"):** During the fullest period allowed by law, all person who purchased the Coppertone Water Babies Product for their personal use and not for resale in the State of California.

88.     Members of the classes described are referred to as "Class Members" or members of the "Classes."

89.     The following are excluded from the Classes: (1) any Judge presiding over this action and members of his or her family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parent have a controlling

interest (as well as current or former employees, officers, and directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

90.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

91.     Plaintiffs reserve the right to amend the definitions of the Classes if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

92.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that individual joinder of all Class Members is impracticable. On information and belief, Class Members number in the thousands to millions. The precise number or identification of members of the Classes are presently unknown to Plaintiffs but may be ascertained from Defendants' books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

93.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes, which predominate over any questions affecting individual members of the Classes. These common questions of law or fact include, but are not limited to, the following:

     a)  Whether the Product contains benzophenone at the time of purchase;

     b)  Whether Defendants omitted or failed to disclose material information to Plaintiffs and Class Members regarding the Product;

c) Whether Defendants' statement that the Product was hypoallergenic is misleading;

d) Whether benzophenone is an allergen;

e) Whether the Product is defectively designed, formulated, and/or manufactured;

f) Whether Defendants knew or reasonably should have known about the harmful level of benzophenone in the Product prior to distributing and selling them to Plaintiffs and Class Members;

g) Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product is deceptive;

h) Whether Defendants' actions violate the consumer protection statutes invoked herein;

i) Whether Defendants breached the implied warranty of merchantability relating to the Product;

j) Whether Defendants breached an express warranty to Plaintiffs and Class Members;

k) Whether Defendants were unjustly enriched at the expense of the Plaintiffs and Class Members;

l) Whether Plaintiffs and Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

m) Whether Plaintiffs and the other Class Members have been injured and the proper measure of their losses as a result of those injuries; and

n) Whether Plaintiffs and the Class Members are entitled to injunctive, declaratory, or other equitable relief.

94.     Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and the other Class Members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

95.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the other Class Members, as each class member was subject to the same

omission of material fact and misrepresentations regarding the presence of benzophenone in the Product. Plaintiffs share the aforementioned facts and legal claims or questions with Class Members, and Plaintiffs and all Class Members have been similarly affected by Defendants' common course of conduct alleged herein.  Plaintiffs and all Class Members sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's deceptive omission of material fact and misrepresentations regarding the presence of benzophenone in the Product.

96.    **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are  adequate representatives of the Classes because they are a member of the Classes and their interests do not conflict with the interests of the Class Members they seek to represent. Plaintiffs have also retained counsel competent and experienced in complex commercial and class action litigation. Plaintiffs and their counsel intend to prosecute this action vigorously for the benefit of all Class Members. Accordingly, the interests of the Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

97.    **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a class action, Class Members will continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. Accordingly, the proposed Classes satisfies the requirements of Fed. R. Civ. P. 23(b)(1).

98.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2)**

Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and All

Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief,

as described below, with respect to the Classes as a whole.

99.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior

to any other available methods for the fair and efficient adjudication of the present controversy for

at least the following reasons:

    a) The damages suffered by each individual putative Class Member do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct;

    b) Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

    c) The claims presented in this case predominate over any questions of law or fact affecting individual Class Members;

    d) Individual joinder of all putative Class Members is impracticable;

    e) Absent a class action, Plaintiffs and putative Class Members will continue to suffer harm as a result of Defendants' unlawful conduct; and

    f) This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and putative Class Members can seek redress for the harm caused by Defendants.

100.    In the alternative, the Classes may be certified for the following reasons:

    a) The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants;

    b) Adjudications of individual Class and Members' claims against Defendants would, as a practical matter, be dispositive of the interests of other putative Class who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests; and

    c) Defendants have acted or refused to act on grounds generally applicable to the

putative Classes, thereby making appropriate final and injunctive relief with respect to the putative Classes as a whole.

**COUNT I**
**Violation of New York General Business Laws § 349**
**(On Behalf Of Plaintiff Truss And The New York Subclass)**

101.    Truss, on behalf of the New York Subclass, repeats and realleges each and every allegation contained in all of the foregoing paragraphs as if fully set forth herein.

102.    N.Y. Gen. Bus. Law §349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[.]"

103.    Defendants' actions occurred in the conduct of business, trade, or commerce.

104.    Defendants' conduct, as described in this Complaint, constitutes "deceptive acts or practices" within the meaning of the N.Y. Gen. Bus. Law.

105.    Defendants' deceptive acts and practices were intended to mislead consumers in a material way in the process of purchasing Defendants' Products, and a reasonable consumer would be misled by their deceptive acts and practices.

106.    All of Defendants' deceptive acts and practices constitute conduct directed at consumers.

107.    Defendants intended that  Truss and each of the other members of the New York Subclass would rely upon their deceptive conduct and false advertising, and consumers, including Truss and putative New York Subclass Members, did in fact rely upon deceptive conduct.

108.    Defendants' foregoing deceptive and unfair acts and practices, including its omissions, were and are deceptive acts or practices in violation of the N.Y. Gen. Bus. Law § 349, Deceptive Acts and Practices, N.Y. Gen. Bus. Law 349, et seq., in that Defendants manufactured, labeled, packaged, marketed, advertised, distributed, and/or sold the Product without any mention of the fact that the Product contains benzophenone.

109.    Defendants' unconscionable, deceptive, and/or unfair practices caused actual damages to Plaintiff and the New York Subclass Members who were unaware that the Product contained benzophenone.

110.    As a direct and proximate result of Defendants' deceptive acts and practices, including its omissions, Truss and New York Subclass Members have been damaged as alleged herein and are thus entitled to recover actual damages to the extent permitted by law in an amount to be proven at trial.

111.    In addition, Truss and New York Subclass Members seek equitable and injunctive relief against Defendants on terms that the Court considers reasonable, in addition to reasonable attorneys' fees and costs.

112.    In addition, Defendants' conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

**COUNT II**
**Violation of New York General Business Laws § 350**
**(On Behalf Of Plaintiff Truss And The New York Subclass)**

113.    Truss, on behalf of the New York Subclass, repeats and realleges each and every allegation contained in all of the foregoing paragraphs as if fully set forth herein.

114.    N.Y. Gen. Bus. Law §350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service[.]"

115.    Defendants' actions occurred in the conduct of business, trade, or commerce.

116.    Defendants' foregoing acts and practices, including their advertising, were directed at consumers.

117.    Defendants' conduct, as described in the Complaint, constitutes "false advertising" within the meaning of the N.Y. Gen. Bus. Law §350, as Defendants publicly disseminating

misleading false advertisements through advertising and marketing the Product, failing to disclose that the Product contains benzophenone.

118.    Defendants' foregoing, consumer-oriented, unfair or deceptive acts and practices, including its advertising, representations, and omissions, constitutes false and misleading advertising in a material way in violation of the N.Y. Gen. Bus. Law § 350.

119.    Defendants' false, misleading, and deceptive advertising and representations include misrepresenting and misleadingly marketing and labeling the Product was fit for their intended purpose of safely protecting consumers from UV exposure and omitting and failing to disclose that the Product contains benzophenone.

120.    Defendants' false, misleading, and deceptive advertising and representations of fact were and are directed at consumers.

121.    Defendants' false, misleading, and deceptive advertising and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

122.    Defendants' false, misleading, and deceptive advertising and representations of fact have resulted in consumer injury or harm to the public interest.

123.    Defendants intended that Truss and the other members of the New York Subclass would rely upon their deceptive conduct and false advertising, and a reasonable person would in fact be misled by this deceptive conduct. Defendants engaged in misleading and deceptive advertising that failed to disclose that the Product contains benzophenone.  Defendants chose to label the Product in this way to impact consumer choices and gain market dominance, as they are aware that all consumers who purchased the Product would be unwilling or less likely to buy the Product if those consumers knew the Product contained benzophenone.  Thus, Defendants' advertising and labeling was an unfair, untrue, and misleading practice.

124.    Consumers, including Truss and New York Subclass members either would not have purchased the Product or would have paid less for them had the known that the Product contains benzophenone.

125.    As a direct and proximate result of Defendants' deceptive acts and practices, including their use or employment of false advertising, Truss and each of the other members of the New York Subclass have sustained actual damages in an amount to be proven at trial.

126.    In addition, Truss and New York Subclass members seek equitable and injunctive relief against Defendants on terms that the Court considers reasonable, in addition to reasonable attorneys' fees and costs.

127.    In addition, Defendants' conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

**COUNT III**
**Violation of the California's Consumer Legal Remedies Act ("CLRA")**
**California Business and Professions Code §§ 1750, *et seq.***
**(Plaintiffs Golson, Kilgore, and Pettibone Individually and on Behalf of the California Subclass)**

128.    Plaintiffs Golson, Kilgore, and Pettibone repeat and reallege each and every allegation contained in all of the foregoing paragraphs as if fully set forth herein.

129.    Defendants' conduct violates California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* which prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

130.    Defendants' conduct falls within the meaning of this statute because it caused transactions to occur resulting in the sale or lease of goods or services to consumers – namely, the sale of the Product to Plaintiffs Golson, Kilgore, and Pettibone and the members of the California

Subclass. Sunscreens are considered goods within the meaning of the statute under Civil Code § 1761(a) and Defendants' sale of the Product is considered a service under Civil Code § 1761(b).

131.    Plaintiffs Golson, Kilgore, and Pettibone, and California Subclass Members are consumers pursuant to the CLRA.

132.    Defendant violated the CLRA by way of the following provisions:

- In violation of Civil Code § 1770(a)(5), Defendants represented (and continue to represent) that its goods have characteristics which they do not have – that, in exchange for each payment, Plaintiffs Golson, Kilgore, and Pettibone, and the members of the Class receive sunscreen which is functioning as intended and which is not contaminated with benzophenone;

- In violation of Civil Code § 1770(a)(14), Defendants represented (and continue to represent) that a consumer has rights, remedies and/or obligations which they did not have – that Plaintiffs Golson, Kilgore, and Pettibone, and members of the Class receive sunscreen which is functioning as intended and which is not contaminated with benzophenone, and that Defendants is capable of correcting defects when it is not;

133.    Defendants also engaged in unfair competition or unfair or deceptive acts or practices in violation of Civil Code § 1770(a)(5) and (a)(7) when it represented through its advertising, warranties, and other express representations that the Product has benefits or characteristics that it did not actually have, namely that the Product was safe for its intended use, that the Product's ingredients conformed to the ingredient list on the Product's label when the Product was actually contaminated with benzophenone at the time of purchase.

134.    Defendants' representations are false and misleading, and, although Defendants are aware of the Product's benzophenone contamination, they continue to sell the Product and introduce it into the stream of commerce without changing the Products' label or alerting consumers to the presence of benzophenone in the Product.

135.    Plaintiffs Golson, Kilgore, and Pettibone, and member of the California Subclass, have suffered injury-in-fact and actual damages as a result of Defendants' omissions and misrepresentations.

136.    On November 23 of 2021, prior to the filing of the original complaint, Plaintiffs Golson and Pettibone put Defendants on written notice of their claims arising from violations of numerous provisions of California law, including the California Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1770, *et seq.*, as well as other causes of action.  On February 23 of 2022, simultaneously with the filing of Plaintiffs' First Amended Complaint, Plaintiffs sent a second notice letter to Defendants putting them on written notice of Plaintiff Kilgore's claims which arise from the same violations.

137.    Plaintiffs' declaration stating facts showing that venue in this District is proper pursuant to Cal. Civ. Code § 1780(c) is attached hereto as Exhibit A.

138.    In accordance with Civil Code § 1780(a), Plaintiffs Golson, Kilgore, and Pettibone, and members of the California Subclass seek injunctive and equitable relief for Defendants' violations of the CLRA, including an injunction to enjoin Defendants from continuing its deceptive and misleading advertising and sales practices.

139.    Pursuant to California Civil Code § 1780(a)(1)-(5) and § 1780(e), Plaintiffs Golson, Kilgore, and Pettibone also seek an order enjoining Defendants from the unlawful practices described above, a declaration that Defendants' conduct violates the Consumers Legal Remedies

Act, reasonable attorneys' fees and litigation costs, and any other relief the Court deems proper under the CLRA.

140.     Plaintiffs Golson, Kilgore, and Pettibone and the California Subclass Members' injuries were proximately caused by Defendants' fraudulent business practices.

141.     Therefore, Plaintiffs Golson, Kilgore, and Pettibone and California Subclass Members are entitled to relief under the CLRA.

**COUNT IV**
**Violation of the California False Advertising Law ("FAL")**
**California Business and Professions Code §§ 17500, et seq.**
**(Plaintiffs Golson, Kilgore, and Pettibone, Individually and on Behalf of the California Subclass)**

142.     Plaintiffs Golson, Kilgore, and Pettibone Golson, Kilgore, and Pettibone repeat and reallege each and every allegation contained in all of the foregoing paragraphs as if fully set forth herein.

143.     Plaintiffs Golson, Kilgore, and Pettibone bring this cause of action against Defendants individually and on behalf of the California Class.

144.     The conduct described herein took place within the state of California and constitutes deceptive or false advertising in violation of California Business and Professions Code §§ 17500, et seq.

145.     California Business and Professions Code §§ 17500, et seq. prohibits deceptive or misleading practices in connection with advertising or representations made for the purpose of inducing, or which are likely to induce, consumers to purchase products.

146.     Defendants, through their marketing, advertisements, and sale of the Product, represented to Plaintiffs Golson, Kilgore, and Pettibone, and members of the California Subclass that the Product was free from defects and safe for its intended use (application to the skin) when,

in reality, the Product suffered from benzophenone contamination which rendered the protect defective and unsafe.

147.    Defendants, at the time of the misrepresentations and/or omissions, knew or should have known that the Product was defective and unsafe, or that it lacked the information and/or knowledge required to truthfully make this assertion. Defendants concealed, omitted, and failed to disclose material facts to Plaintiffs Golson, Kilgore, and Pettibone, and members of the California Subclass.

148.    Defendants' descriptions of the Product were false, misleading, and likely to deceive Plaintiffs and other reasonable consumers.

149.    Defendants' conduct constitutes deceptive or misleading advertising.

150.    Plaintiffs have standing to pursue claims under the FAL as they reasonably reviewed and relied on Defendants' packaging, advertising, representations, and marketing materials when they selected and purchased the Product.

151.    In reliance on the statements made by Defendants' advertising and marketing materials, and Defendants' omissions and concealment of material facts regarding the quality and use of the Product, Plaintiffs Golson, Kilgore, and Pettibone, and member of the California Subclass purchased the Product.

152.    Had Defendants disclosed the true defective nature of the Product, Plaintiffs Golson, Kilgore, and Pettibone, and members of the California Subclass would not have purchased the Product or would have paid substantially less for it.

153.    As a direct and proximate result of Defendants' actions, as set forth herein, Defendants have received ill-gotten gains and/or profits, including but not limited to money from

Plaintiffs Golson, Kilgore, and Pettibone, and members of the California Subclass who purchased the Product.

154.    Plaintiffs Golson, Kilgore, and Pettibone, and members of the California Subclass seek injunctive relief, restitution, and disgorgement of any monies wrongfully acquired or retained by Defendants through their deceptive or misleading representations, including monies already obtained from Plaintiffs Golson, Kilgore, and Pettibone, and members of the California Class as provided for by the California Business and Professions Code §§ 17500, *et seq.*

**COUNT V**
**Violations of The California Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200, et seq.**
**(Plaintiffs Golson, Kilgore, and Pettibone Individually and on Behalf of the California Subclass)**

155.    Plaintiffs Golson, Kilgore, and Pettibone repeat and reallege each and every allegation contained in all of the foregoing paragraphs as if fully set forth herein.

156.    Plaintiffs Golson, Kilgore, and Pettibone bring this cause of action against Defendants individually and on behalf of the California Class.

157.    Defendants are a "person" as defined by Cal. Bus. & Prof. Code § 17201.

158.    Plaintiffs Golson, Kilgore, and Pettibone, and members of the California Subclass who purchased Defendants' Product suffered an injury by virtue of buying a defective sunscreen product as a result of Defendants' misrepresentations and/or omissions as to the Product's true quality, reliability, ingredients, safety, and use.

159.    Had Plaintiffs Golson, Kilgore, and Pettibone, and members of the California Subclass known that Defendants materially misrepresented the Product and/or omitted material information regarding its defective nature and/or safety they would not have purchased the Product.

160.    Defendants' conduct, as alleged herein, violates the laws and public policies of California and the federal government, as set out in the preceding paragraphs of this complaint.

161.    There is no benefit to consumers or competition by allowing Defendants to deceptively label, market, and advertise its Product.

162.    Plaintiffs Golson, Kilgore, and Pettibone, and members of the California Subclass had no reasonable way of knowing that the Product was: (1) deceptively packaged and labeled, (2) deceptively marketed and advertised, (3) was defective, unsafe, and unsuitable for its intended use, and (4) included an ingredient that was not listed on its label or ingredients list. Thus, Plaintiffs Golson, Kilgore, and Pettibone, and members of the California Subclass could not have reasonably avoided the harm they suffered.

163.    Defendants' actions, including disseminating misleading and deceptive statements to consumers throughout the state of California, were and are likely to deceive reasonable consumers—including Plaintiffs and members of the California subclass—by obfuscating and omitting the true defective nature of Defendants' Product, and therefore violate Cal. Bus. & Prof. Code §§ 17500, et seq.

164.    As a result of Defendants' above unlawful, unfair, and fraudulent acts and practices, Plaintiffs Golson, Kilgore, and Pettibone, on behalf of themselves and all others similarly situated, and as appropriate, on behalf of the general public, seek injunctive relief prohibiting Defendants from continuing these wrongful practices, and such other equitable relief, including full restitution of all improper revenues and ill-gotten profits derived from Defendants' wrongful conduct to the fullest extent permitted by law.

165.    Mislabeled cosmetics cannot legally be manufactured, held, advertised, distributed, or sold.  Thus, mislabeled cosmetics have no economic value and are worthless as a matter of law,

and purchasers of mislabeled cosmetics are entitled to a restitution refund of the purchase price of the mislabeled cosmetics.

**COUNT VI**
**Breach of Express Warranty**
**(On Behalf of Plaintiffs Individually, the National Class and,**
**alternatively, the New York and California Subclasses)**

166.    Plaintiffs hereby re-allege and incorporate all allegations contained in the preceding paragraphs as if fully set forth herein.

167.    Plaintiffs, and each member of the Classes, formed a contract with Defendants at the time Plaintiff and each member of the Classes purchased the Product.

168.    The terms of the contract include the promises and affirmations of fact made by Defendants on the Product's packaging and through marketing and advertising, as described above.

169.    This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiff and the members of the Classes and Defendants.

170.    As set forth above, Defendants purport, through advertising, labeling, marketing, and packaging, to create an express warranty that the Product is safe for its intended use.

171.    Plaintiffs and the members of the Classes performed all conditions precedent to Defendants' liability under this contract when they purchased the Product.

172.    Defendants breached express warranties about the Product and their qualities because Defendants' Product contained the harmful chemical benzophenone at the time of purchase and that the chemical octocrylene degrades over time resulting in an accumulation of benzophenone and the Product does not conform to Defendants' affirmations and promises described above.

173.    Plaintiffs and each of the members of the Classes would not have purchased the Product had they known the true nature of the harmful chemical in the Product.

174.    As a result of Defendants' breach of warranty, Plaintiffs and each of the members of the Classes have been damaged in the amount of the purchase price of the Product and any consequential damages resulting from their purchases.

**COUNT VII**
**Breach of Implied Warranty of Merchantability**
**(On Behalf of Plaintiffs Individually, the National Class and,**
**alternatively, the New York and California Subclasses)**

175.    Plaintiffs hereby re-allege and incorporate all allegations contained in the preceding paragraphs as if fully set forth herein. Each Plaintiff brings this claim on behalf of themselves and their respective State Class, including New York and California. Each of the states represented by Plaintiffs have adopted UCC § 2-314, which states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." *See* Cal. Comm. Code § 2314; N.Y. U.C.C. § 2-314.

176.    Defendant is and was at all relevant times a merchant as defined by the relevant State statutes. The Product sold to Plaintiffs and Class Members are goods as defined by the relevant State statutes. Defendants sold, and Plaintiffs and members of the Class purchased, the Products from authorized resellers of Defendants' products.

177.    Defendants provided Plaintiffs and Class Members with implied warranties that the Product was merchantable and fit for the ordinary purposes for which it was sold, i.e. that it was safe and gentle for babies skin and free from benzophenone by virtue of being marketed as hypoallergenic.

178.    Defendants marketed, sold, and/or distributed the Product, and Plaintiffs and other Class Members purchased the Product.

179.    By placing such products into the stream of commerce, Defendants impliedly warranted to Plaintiffs and members of the Class that the Products were of merchantable quality (i.e., a product of a high enough quality to make it fit for sale, usable for the purpose it was made, of average worth in the marketplace, or not broken, unworkable, contaminated or flawed or containing a defect affecting the safety of the product), would pass without objection in the trade or business, and were free from material defects, and reasonably fit for the use for which they were intended.

180.    When sold by Defendants, the Product was not merchantable, did not pass without objection in the trade, was not of adequate quality within that description, was not fit for the ordinary purposes for which such goods are used, and did not conform to the promises or affirmations of fact made on the container or label.

181.    Defendants breached the implied warranty of merchantability because the Product suffers from a latent or inherent defect that have the propensity to cause, and have caused, allergic reaction, skin rashes, and other dermatologically issues when used as directed, rendering them unfit for their intended use and purpose. This defect substantially impairs the use, value, and safety of the Product.

182.    As a result of Defendants' breaches of implied warranties, Class members did not receive the benefit of their bargain and suffered damages at the point of sale stemming from their overpayment for the Product that contained benzophenone.

183.    As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the other class members have been damaged in an amount to be proven at trial.

**COUNT VIII**
**Unjust Enrichment**
**(On Behalf of Plaintiffs, the National Class and, alternatively, the New York and California Subclasses)**

184.    Plaintiffs hereby re-allege and incorporate all allegations contained in the preceding paragraphs as if fully set forth herein.

185.    Plaintiffs bring this count against Defendant on behalf of members of the Nationwide Class. In the alternative, Plaintiffs reserve the right to bring these claims on behalf of their respective State Classes.

186.    Plaintiffs and Class Members bring this claim for unjust enrichmenat against Defendants in the alternative to their breach of express warranty claim.

187.    Plaintiffs and Class Members conferred benefits on Defendants when they purchased the Products, and Defendants received and had knowledge of this benefit.

188.    Defendants, as the result of their wrongful acts and the omissions described herein, have been unjustly enriched at the expense of Plaintiffs and Class Members.

189.    Retention of those monies under these circumstances is unjust and inequitable because Defendants' labeling of the Product was misleading to consumers, which caused injuries to Plaintiffs and the other members of the Classes because they would have not purchased the Product if Defendants had disclosed that the Product contained benzophenone.

190.    Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and the other members of the Classes is unjust and inequitable, Defendants must pay restitution to Plaintiff and the other members of the Classes for their unjust enrichment, as ordered by the Court.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class Members, pray for

judgment and relief against Defendants as follows:

a) For an order declaring: (i) this is a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Classes described herein; and (ii) appointing Plaintiffs to serve as representatives for the Classes and Plaintiffs' counsel to serve as Class Counsel;

b) For an order enjoining Defendants from continuing to engage in the unlawful conduct set forth herein;

c) For an order awarding restitution of the monies Defendants wrongfully acquired by its illegal and deceptive conduct;

d) For an order requiring disgorgement of the monies Defendants wrongfully acquired by its illegal and deceptive conduct;

e) For compensatory and punitive damages, including actual and statutory damages, arising from Defendants' wrongful conduct and illegal conduct;

f) For an award of reasonable attorneys' fees and costs and expenses incurred in the course of prosecuting this action; and

g) For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all

claims in this Complaint so triable.

Dated: April 21, 2022                               Respectfully submitted

*s/ Mitchell M. Breit*
Mitchell M. Breit
Blake Hunter Yagman*
*mbreit@milberg.com*
*byagman@milberg.com*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
405 East 50th Street
New York, New York 10022
Tel.:    (212) 594-5300

Nick Suciu, III*
*nsuciu@milberg.com*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel.:   (313) 303-3472
Fax:    (865) 522-0049

Alexandra M. Honeycutt*
Jen Czeisler
Virginia Ann Whitener*
Russell Busch*
*ahoneycutt@milberg.com*
*jczeisler@milberg.com*
*gwhitener@milberg.com*
*rbusch@milberg.com*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 100
Knoxville, TN 37929
Tel.:   (865) 247-0080
Fax:    (865) 522-0049


**Pro Hac Vice* Application
Forthcoming

*Attorneys for Plaintiffs*