UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

BARBARA TRUSS, NATALIA GOLSON,
JACK KILGORE, and GABRIELA
PETTIBONE, individually and on behalf
of all others similarly situated,

              Plaintiff,                           Case No. 7:21-CV-09845-VB-AEK

-v-

BAYER HEALTHCARE
PHARMACEUTICALS INC., a Delaware
Corporation; BAYER HEALTHCARE LLC, a
Delaware limited liability company; BEIERSDORF,
INC., a Delaware corporation; and BEIERSDORF
NORTH AMERICA, INC., a Delaware corporation,

              Defendants.
-----------------------------------------------------------------X

**BAYER HEALTHCARE PHARMACEUTICALS INC., BAYER HEALTHCARE LLC,
BEIERSDORF, INC., AND BEIERSDORF NORTH AMERICA, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

Eamon P. Joyce
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Tel: (212) 839-5300
ejoyce@sidley.com

T. Robert Scarborough*
tscarborough@sidley.com
Elizabeth M. Chiarello*
echiarello@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Tel: (312) 853-7000

*Admitted Pro Hac Vice
Counsel for Defendants*

Dated: May 26, 2022

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ...................................................................................................................... 2

ARGUMENT .......................................................................................................................... 6

I.     THE FDCA PREEMPTS PLAINTIFFS' CLAIMS BECAUSE THEY ALL SEEK TO IMPOSE REQUIREMENTS REGARDING BENZOPHENONE DIFFERENT FROM OR IN ADDITION TO THOSE UNDER FEDERAL LAW. .......................................... 6

II.    PLAINTIFFS ALSO FAIL TO STATE A CLAIM UNDER STATE LAW. ................... 9

   A.   Plaintiffs' Breach of Warranty Claims Fail. ..........................................................9

      1.   Plaintiffs' Express Warranty Claims Fail Because Defendants Did Not Make Any Warranties Regarding Octocrylene Or Benzophenone, Or Breach Any Other Warranties Made, And Plaintiff Truss' Claim Fails For Lack Of Pre-Suit Notice..... 9

      2.   Plaintiffs' Implied Warranty Claims Fail For Lack of Privity And Because The Product Is Fit For Its Intended Purchase, And Plaintiff Truss' Implied Warranty Claims Fails For Lack Of Notice. ................................................................................. 12

   B.   Plaintiffs' Statutory Claims Fail For Many Reasons. .........................................13

      1.   Plaintiffs' Omissions Claim Fails in New York and California. ............................ 14

          a.   Plaintiff Truss Fails To Allege That Defendants *Alone* Knew The Product Contained Benzophenone Before She Purchased The Product, Which Is Fatal To Her New York GBL Claims. ................................................................ 14

          b.   The California Plaintiffs Fail To Allege Facts To Support Any Limited Bases For Omissions Claims Under The CLRA, FAL, And UCL. ......................... 15

      2.   Plaintiffs Fail To Plead Affirmative Misrepresentation Theories........................... 17

          a.   Plaintiffs Do Not Allege Any Statement Regarding Benzophenone Or Octocrylene On The Product Label............................................................... 17

          b.   Plaintiffs Fail To Plead Any Misrepresentation Theory Based On "Hypoallergenic" Labeling.......................................................................... 17

          c.   Plaintiffs Fail To Plead Any Misrepresentation Theory Based On "Free Of Oxybenzone" Labeling.............................................................................. 18

          d.   Any Statements From Defendants' Website Are Not Actionable Misrepresentations.................................................................................... 19

      3.   Second Circuit Law Precludes Plaintiff Truss From Predicating Deception On The Alleged Violation Of Another Statute. ...................................................................... 19

   C.   Plaintiffs' Unjust Enrichment Claim Fails............................................................20

III.   EVEN IF PLAINTIFFS' CLAIMS SURVIVE DISMISSAL, PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF. ................................................................ 22

CONCLUSION.......................................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Apotex Inc. v. Acorda Therapeutics, Inc.*,
   823 F.3d 51 (2d Cir. 2016)................................................................................................4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................................................6

*Becerra v. Dr Pepper/Seven Up, Inc.*,
   No. 17-cv-05921-WHO, 2018 WL 3995832 (N.D. Cal. Aug. 21, 2018), *aff'd*,
   945 F.3d 1225 (9th Cir. 2019) ........................................................................................11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................................................6

*Bellevue South Associates v. HRH Const. Corp.*,
   78 N.Y.2d 282 (1991) ......................................................................................................12

*Berni v. Barilla S.P.A.*,
   964 F.3d 141 (2d Cir. 2020)........................................................................................2, 22

*Beth Israel Med. Ctr. v. Verizon Bus. Network Servs., Inc.*,
   No. 11-cv-4509 (RJS), 2013 WL 1385210 (S.D.N.Y. Mar. 18, 2013)...................................14

*Bimont v. Unilever U.S., Inc.*,
   No. 14-cv-7749 (JPO), 2015 WL 5256988 (S.D.N.Y. Sept. 9, 2015) ......................................7

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) ..........................................................................................13

*Bowling v. Johnson & Johnson*,
   65 F. Supp. 3d 371 (S.D.N.Y. 2014).................................................................................9

*Broder v. Cablevision Sys. Corp.*,
   418 F.3d 187 (2d Cir. 2005)........................................................................................7, 20

*Buckman Co. v. Plaintiffs' Legal Comm.*,
   531 U.S. 341 (2001)........................................................................................................20

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002)..............................................................................................8

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) ...................................................................................12, 13

i

*Conboy v. AT&T,*
    241 F.3d 242 (2d Cir. 2001)................................................................................19, 20

*Corsello v. Verizon N.Y., Inc.,*
    944 N.Y.S.2d 732 (2012)................................................................................21

*Cortec Industries, Inc. v. Sum Holding L.P.,*
    949 F.2d 42 (2d Cir. 1991)................................................................................8

*Critcher v. L'Oréal USA, Inc.,*
    959 F.3d 31 (2d Cir. 2020)................................................................ *passim*

*Dimond v. Darden Rests., Inc.,*
    No. 13-cv-5244 (KPF), 2014 WL 3377105 (S.D.N.Y. July 9, 2014)................................14, 15

*Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoes Co. LLC,*
    382 F. App'x. 110 (2d Cir. 2010) ........................................................................10

*Gale v. Int'l Bus. Machs. Corp.,*
    9 A.D.3d 446 (2d Dep't 2004) ........................................................................19

*Gray v. Toyota Motor Sales, U.S.A.,*
    No. CV 08–1690 PSG (JCx), 2012 WL 313703 (C.D. Cal. Jan. 23, 2012)...........................17

*Harris v. Pfizer Inc.,*
    No. 21-cv-6789 (DLC), 2022 WL 488410 (S.D.N.Y. Feb. 16, 2022)..................10, 13, 17, 21

*Harris v. R. J. Reynold Vapor Co.,*
    No. 15-cv-04075-JD, 2017 WL 3617061 (N.D. Cal. Aug. 23, 2017) ....................................16

*Hodson v. Mars, Inc.,*
    891 F.3d 857 (9th Cir. 2018) ........................................................................15

*King's Choice Neckwear, Inc. v. Pitney Bowes, Inc.,*
    No. 09 Civ. 3980 (DLC), 2009 WL 5033960 (S.D.N.Y. Dec. 23, 2009) ...............................22

*MacDraw, Inc. v. The CIT Grp. Equip. Fin, Inc.,*
    157 F.3d 956 (2d Cir. 1998)................................................................................21

*Maneely v. General Motors Corp.,*
    108 F.3d 1176 (9th Cir. 1997) ........................................................................10

*Myers-Taylor v. Ornua Foods North America, Inc.,*
    No. 3:18-cv-01538-H-MDD, 2019 U.S. Dist. LEXIS 17678 (S.D. Cal. Feb. 4, 2019) ........................................................................11

*Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.,*
    710 F.3d 71 (2d Cir. 2013)................................................................................4

*Oestreicher v. Alienware Corp.*,
544 F. Supp. 2d 964 (N.D. Cal. 2008), *aff'd*, 322 F. App'x. 489 (9th Cir. 2009) .......................................................................................................................................17

*Oswego v. Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
85 N.Y.2d 20 (1995) ...........................................................................................................14

*Patt v. Antech Diagnostics, Inc.*,
No. 8:18-cv-01689-JLS-DFM, 2020 WL 5076970 (C.D. Cal. May 18, 2020) ......................16

*Ricci v. Teamsters Union Local 456*,
781 F.3d 25 (2d Cir. 2015).....................................................................................................6

*Rugg v. Johnson & Johnson*,
No. 17-CV-05010 (BLF), 2018 WL 3023493 (N.D. Cal. June 18, 2018).......................11, 18

*Sanders v. Apple Inc.*,
672 F.Supp.2d 978 (N.D. Cal. 2009) ...................................................................................16

*Sarr v. BEF Foods Inc.*,
No. 18-cv-6409(ARR), 2020 WL 729883 (E.D.N.Y. Feb. 13, 2020) ...................................10

*Sateriale v. R.J. Reynold Tobacco Co.*,
697 F.3d 777 (9th Cir. 2012) ...............................................................................................19

*In re Sony PS3 Other OS Litig.*,
551 F. App'x. 916 (9th Cir. 2014) ........................................................................................21

*Twohig v. Shop-Rite Supermarkets, Inc.*,
519 F. Supp. 3d 154 (S.D.N.Y. 2021).................................................................................10

*Valcarcel v. Ahold U.S.A., Inc.*,
No. 21-cv-07821 (JSR), 2021 WL 6106209 (S.D.N.Y. Dec. 22, 2021)...............12, 13, 22, 23

*Verzani v. Costco Wholesale Corp.*,
No. 09-cv-2117(CM), 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010), *aff'd*,
432 F. App'x. 29 (2d Cir. 2011) ...........................................................................................20

*Wallace v. Wise Foods, Inc.*,
No. 20-cv-6831 (JPO), 2021 WL 3163599 (S.D.N.Y. July 26, 2021) ...................................11

*Walsh v. Hayward Industrial Products, Inc.*,
7 F. App'x. 72 (2d Cir. 2001) ..............................................................................................13

*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012) .............................................................................................16

*Womack v. Evol. Nutrition Assocs.*,
   No. 6:21-cv-00332, 2021 WL 5906340 (N.D.N.Y. Dec. 14, 2021) .......................................17

*Young v. L'Oréal*,
   No. 21-cv-0446 (GHW) (KHP), 2021 WL 2295625 (S.D.N.Y. May 20, 2021) .....................9

*Zottola v. Eisai Inc.*,
   20-cv-02600 (PMH), 2021 WL 4460563 (S.D.N.Y. Sept. 29, 2021) ....................................17

**Statutes**

21 C.F.R. § 201.327 ...........................................................................................................5

21 C.F.R. § 352 .................................................................................................................5

21 U.S.C. § 379r(a)(2) .....................................................................................................6, 9

21 U.S.C. § 393 .................................................................................................................4

N.Y. U.C.C. § 2-607(3)(a) .............................................................................................12

CARES Act §§ 3851(a)(2), 3854(c)(1)(B) .....................................................................8

CARES Act § 3854, Pub. L. No. 116–136, 134 Stat. 281 (2020) ..................................5

Fed. R. Civ. P. 12(b)(1) ..........................................................................................1, 2, 22, 23

Fed. R. Civ. P. 12(b)(6) ...............................................................................................1, 6, 23

**Other Authorities**

FDA, *Over-the-Counter Monograph M020: Sunscreen Drug Products for Over-
   the-Counter Human Use* (posted Sept. 24, 2021) ............................................. *passim*

FDA, *Drug Applications for Over-the-Counter (OTC) Drugs* (March 31, 2020) .....................4, 5

FDA, *Questions and Answers: FDA Posts Deemed Final Order And Proposed
   Order For Over-The-Counter Sunscreen* (Nov. 16, 2021) ......................................8

FDA, *Proposed Order: Amending Over-the-Counter (OTC) Monograph M020:
   Sunscreen Drug Products for OTC Human Use* (issued Sept. 24, 2021) ..................8

Defendants Bayer HealthCare Pharmaceuticals Inc., Bayer HealthCare LLC, Beiersdorf, Inc., and Beiersdorf North America, Inc. (collectively, the "Defendants") respectfully submit this Memorandum of Law in Support of their Motion to Dismiss the Second Amended Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, to dismiss under Rule 12(b)(1) for lack of standing as to any surviving claim seeking injunctive relief.

## PRELIMINARY STATEMENT

Plaintiffs Natalia Golson, Jack Kilgore, and Gabriela Pettibone (the "California Plaintiffs") and Plaintiff Barbara Truss (collectively, the "Plaintiffs") challenge the label and formulation of Coppertone Water Babies (SPF 50) (the "Product"). *See* Second Am. Class Action Compl. ("SAC" or "Complaint") (ECF No. 45) ¶ 1. Although Plaintiffs recently amended their Complaint in an effort to avoid express preemption, the fact remains: Plaintiffs claim that the Product label is misleading because the Product is formulated with octocrylene, a Food and Drug Administration ("FDA") approved sunscreen ingredient. Despite FDA's classification of octocrylene as a permissible active sunscreen ingredient, Plaintiffs complain that octocrylene degrades into benzophenone over time, SAC ¶¶ 35 n.14, 37 n.15, 41, 172, and, in turn, the Product label—which says nothing about benzophenone—deceives a reasonable consumer into believing that the Product is benzophenone-free, *id.* ¶ 33. The Complaint should be dismissed in full because Plaintiffs' claims are preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA"). Plaintiffs impermissibly attempt to use state law to impose requirements that are "different from or in addition to, or [ ] otherwise not identical with" the requirements that federal law imposes. *See, e.g.*, *Critcher v. L'Oréal USA, Inc.*, 959 F.3d 31, 35–38 (2d Cir. 2020).

Even if Plaintiffs' claims were not preempted, Plaintiffs fail to state a claim under state law. *First*, Plaintiffs' warranty claims fail because, *inter alia*, Defendants did not make any express warranties about octocrylene or benzophenone or breach any other express warranties made, and,

contrary to the requirements for implied warranty, Plaintiffs are not in privity with Defendants and do not allege that the Product failed to work as intended. *Second*, Plaintiffs' statutory consumer protection claims fail for several reasons. Foremost is that the Complaint presses a doomed omissions theory. The Complaint's gravamen is Defendants failed to disclose that the Product contained benzophenone that resulted from use of octocrylene in the Product formulation. Yet the Complaint fails to allege that Defendants *alone* knew that octocrylene could degrade into benzophenone—as required for an omission claim. To the extent Plaintiffs allege a misrepresentation theory, no reasonable consumer would have been misled by the Product's label into believing it guaranteed the Product was benzophenone-free, and Plaintiffs' attempt to salvage their claims by attacking the "hypoallergenic" or "free of oxybenzone" representations fails because Plaintiffs allege no facts showing that benzophenone is an allergen and because oxybenzone has no relevance to the benzophenone at issue here. *Third*, Plaintiffs' unjust enrichment claims fail because, *inter alia*, Plaintiff Truss alleges a contractual relationship with Defendants, all Plaintiffs' claims are duplicative of other causes of action, and, in any event, Plaintiffs fail to plead any conduct that is actually unjust.

Finally, and in the alternative, should this Court determine that any of Plaintiffs' claims may proceed, their injunctive relief requests must be dismissed under Rule 12(b)(1). Plaintiffs fail to allege any threat of future imminent harm and therefore lack standing under Article III to seek injunctive relief. *See*, *e.g.*, *Berni v. Barilla S.P.A.*, 964 F.3d 141, 147 (2d Cir. 2020).

## **BACKGROUND**

**Plaintiffs' Claims.** Plaintiffs allege that they purchased the Product in New York (Truss) or California (Golson, Kilgore, Pettibone) in 2021. SAC ¶¶ 44, 53, 62, 72. The Product label supposedly deceives consumers because it does not disclose that the Product allegedly either contains trace amounts of benzophenone at the time of purchase or that the octocrylene in the

Product—which is used in thousands of personal care products in the U.S.[1]—degrades into benzophenone over time. *Id.* ¶ 33 ("[N]othing on the Product's label insinuates, states, or warns that the Product contains benzophenone."); *id.* ¶ 83 (alleging Defendants "*omit[ted]* material facts about the Product's ingredients and the benzophenone contamination affecting the Product") (emphasis added); *id.* ¶ 172 ("Defendants' Product contained the harmful chemical benzophenone at the time of purchase and [] the chemical octocrylene degrades over time resulting in an accumulation of benzophenone[.]"). Plaintiffs' amended Complaint also newly asserts that stating "hypoallergenic" on the Product label is misleading because the Product contains benzophenone, which Plaintiffs claim is an allergen and skin irritant, *id.* ¶ 3, and that "free of oxybenzone" is misleading because the Product contains benzophenone-3, *id.* ¶ 2 n.1. Plaintiff Truss and the California Plaintiffs assert that these alleged deceptions violate New York GBL §§ 349 and 350, *id.* ¶¶ 101–27, and the California CLRA §§ 1750, *et seq.*, FAL §§ 17500, *et seq.*, and UCL §§ 17200, *et seq.*, respectively, SAC ¶¶ 128–65. Based on the same theories, Plaintiffs allege breach of express and implied warranty and unjust enrichment. *Id.* ¶¶ 166–190.

In their prior complaints, Plaintiffs unequivocally alleged that octocrylene necessarily contains trace amounts of benzophenone and, over time, degrades into benzophenone. *See, e.g.*, First Am. Class Action Complaint ("FAC"), Dkt. 29, ¶ 2 ("The Product is defective because, undisclosed to consumers, it contains the chemical benzophenone, . . . [which] is present in the finished Product because the Product is formulated with octocrylene, a chemical sun filter that degrades over time, causing an accumulation of benzophenone."); *id.* ¶ 31 (similar); Class Action Complaint, Dkt. 1, ¶ 1 (Benzophenone "is present in the finished Product because the Product is

---

[1] C. A. Downs, Joseph C. DiNardo, Didier Stien, Alice M. S. Rodrigues, and Philippe Lebaron, *Benzophenone Accumulates over Time from the Degradation of Octocrylene in Commercial Sunscreen Products*, CHEMICAL RESEARCH IN TOXICOLOGY, 2021 34 (4), 1046-1054 (noting that, as of "March of 2019, 2999 SPF products [] were registered for sale in the United States [that] contained octocrylene"). Plaintiffs cite this article at SAC ¶ 37 n.15.

formulated with the chemical octocrylene which over time degrades, resulting in an accumulation of benzophenone."). Plaintiffs now hedge their bets, alleging, on the one hand and for the first time in this litigation, that the source of any alleged benzophenone in the Product is "unclear," SAC ¶ 35 n.14, yet still maintaining on the other hand, that octocrylene degrades over time into benzophenone, *id.* ¶¶ 35 n.14, 37 n.15, 41, 172.

Plaintiffs also claim that the Product's "free of oxybenzone" label is misleading by pointing out that oxybenzone is also known as "benzophenone-3." *Id.* ¶ 30 n. 9. But oxybenzone is an entirely different compound from the benzophenone allegedly found in the Product, as Plaintiffs' own Complaint makes clear when it notes that oxybenzone (benzophenone-3) is FDA-approved, *id.* ¶ 2 n.1, while alleging that the benzophenone contained in the Product is not. SAC ¶ 2. Plaintiffs state "consumers would not expect the Product to contain benzophenone-3," *id.* n.1, but Plaintiffs do not allege the Product contains benzophenone-3.

***FDA's Monograph Comprehensively Regulates Sunscreen Labels and Approves Octocrylene Up To 10%.*** Through a variety of tools—including governing statutes, regulations, final rules, and enforcement policies—FDA comprehensively regulates over-the-counter ("OTC") drugs. *See* 21 U.S.C. § 393. One of these tools is the monograph: "a kind of 'recipe book' covering acceptable ingredients, doses, formulations, and labeling." FDA, *Drug Applications for Over-the-Counter (OTC) Drugs* (March 31, 2020).[2] As the Second Circuit explained, the monograph is "a detailed regulation . . . for each therapeutic class of OTC drug products," which "allows manufacturers to bypass individualized review" of individual products they seek to market. *Nat.*

---

[2] https://www.fda.gov/drugs/types-applications/drug-applications-over-counter-otc-drugs.  Defendants cite and provide links to publicly-available FDA guidance and articles throughout this Motion. These documents are noticeable and therefore appropriately considered on a motion to dismiss. *See, e.g., Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59–60 (2d Cir. 2016) ("Although this case partially arises on a motion to dismiss, we may properly take judicial notice of [FDA Guidance] (without converting Acorda's motion to dismiss into a motion for summary judgment) because the Guidance is publicly available and its accuracy cannot reasonably be questioned.") (citing Fed. R. Evid. 201(b)).

*Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 75 (2d Cir. 2013). The OTC drug monographs provide comprehensive guardrails for "the safety, effectiveness, and labeling of all marketing OTC active ingredients." FDA, *Drug Applications for Over-the-Counter (OTC) Drugs* (March 31, 2020).[3] Through the monograph, FDA thoroughly regulates all facets of sunscreens, including labeling, ingredient formulation, and product testing.

For decades, FDA has established labeling and testing regulations for sunscreens, including through the monograph.[4] Particularly over the past three years, FDA has actively regulated sunscreens, and Congress has specifically legislated in this area by enacting § 505G of the FDCA through the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act").[5] *See* CARES Act § 3854, Pub. L. No. 116–136, 134 Stat. 281 (2020). The CARES Act established the 2020 Monograph—effective on March 27, 2020—which provides the current binding requirements for sunscreen manufacturers. It expressly permits, for example, the formulation of sunscreen products using a combination of 16 sunscreen active ingredients below certain thresholds. *Id.* at 2–5. Critical here, one of these permissible ingredients is "Octocrylene up to 10%." *Id.*

The 2020 Monograph also comprehensively regulates product labels. These regulations require that the label contains claims regarding product effectiveness and water resistance, provides the established name of the drug, identifies the product as a sunscreen, describes product

---

[3] https://www.fda.gov/drugs/types-applications/drug-applications-over-counter-otc-drugs.
[4] *See, e.g.*, 21 C.F.R. § 352 (1999) (the final sunscreen monograph of 1999 that included conditions for active ingredients to be generally recognized as safe and effective and was stayed indefinitely in 2001); 21 C.F.R. § 201.327 (2011) (the 2011 final sunscreen rule, which regulates the entirety of sunscreen product labels, with requirements applicable to products' principal display panels, uses, warnings, and directions); *see also* Guidance for Industry (May 2018) at 6, https://collections.nlm.nih.gov/master/borndig/101734210/UCM259001.pdf.
[5] The CARES Act set aside a 2019 proposed rule and instead deemed final a sunscreen monograph adopting the requirements of the 1999 monograph (found in 21 C.F.R. § 352) plus the effectiveness and labeling requirements of the 2011 final rule (found in 21 C.F.R. § 201.327). *See* FDA, Over-the-Counter Monograph M020: Sunscreen Drug Products for Over-the-Counter Human Use (posted Sept. 24, 2021) (the "2020 Monograph"); https://www.accessdata.fda.gov/drugsatfda_docs/omuf/OTCMonograph_M020-SunscreenDrugProductsforOTCHumanUse09242021.pdf.

uses, specifies applicable warnings, provides product directions, and eliminates any false or misleading claims like "sunblock," "sweatproof," "waterproof," or "similar claims." *Id.* at 6–8. The 2020 Monograph also provides specific formulation and testing guidelines, as well as requirements for the frequency of testing and the number of subjects. *Id.* at 6–18. The CARES Act specifies that sunscreens manufactured and marketed within the boundaries set by the 2020 Monograph and other federal regulations are deemed to be generally recognized as safe and effective (or "GRASE"). *See id.* at 1. Because the 2020 Monograph expressly permits its use, octocrylene is currently used in thousands of sunscreen products. *Supra* at n.1.

## ARGUMENT

A complaint must be dismissed under Rule 12(b)(6) if it does not "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[L]abels and conclusions" or "formulaic recitation of the elements of a cause of action" do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Because a preemption defense is grounded in law, it is properly raised on a motion to dismiss. *See Critcher*, 959 F.3d at 38 (dismissing complaint on preemption grounds). Dismissal is appropriate "if the statute's barrier to suit is evident from the face of the complaint." *Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 28 (2d Cir. 2015).

**I.    THE FDCA PREEMPTS PLAINTIFFS' CLAIMS BECAUSE THEY ALL SEEK TO IMPOSE REQUIREMENTS REGARDING BENZOPHENONE DIFFERENT FROM OR IN ADDITION TO THOSE UNDER FEDERAL LAW.**

Plaintiffs' claims are expressly preempted by the FDCA. Congress has prohibited states from establishing any requirement relating to the regulation of an OTC drug "different from or in addition to, or that is otherwise not identical with" a requirement under the FDCA. 21 U.S.C. § 379r(a)(2). As the Second Circuit recently recognized, Congress added "an expansive

6

preemption provision" to the FDCA. *Critcher*, 959 F.3d at 35.[6] In practice, this provision means the FDCA preempts both state laws that conflict with the FDCA *and* state laws that provide "requirements that are not *exactly the same* as those set forth in the FDCA and its regulations (*i.e.*, any law that is 'in addition to' the FDCA)." *Id.* at 35–36 (emphasis in original) (reasoning that claims requiring the manufacturer to "make an additional disclosure on its packaging" beyond those "already mandated in the FDCA and the regulations promulgated thereunder" are preempted by the FDCA). Plaintiffs' claims here are materially indistinguishable from those the Second Circuit held that the FDCA expressly preempted in *Critcher*. *See id.* at 31.[7] The Second Amended Complaint must be dismissed.

Plaintiffs allege that octocrylene degrades into benzophenone. SAC ¶¶ 35 n.14, 37 n.15, 41, 172.[8] Octocrylene is included in the 2020 Monograph's list of permissible active ingredients, and the amount of octocrylene in the Product is within the prescribed limits. *See* Declaration of Eamon P. Joyce ("Joyce Decl.") Ex. 1 (label identifying that the Product contains 9% of

---

[6] *Critcher* applied the FDCA's preemption provision for cosmetic products. That provision is substantively identical to the neighboring preemption provision for OTC drugs with one notable exception: the drug preemption provision is broader. The cosmetics provision limits the ban to requirements for "labeling or packaging," but the drug preemption provision prohibits the imposition of *any* state law requirements—whether they relate to labeling, packaging, or any other element of the product at issue. *See Bimont v. Unilever U.S., Inc.*, No. 14-cv-7749 (JPO), 2015 WL 5256988, at *2 (S.D.N.Y. Sept. 9, 2015) (discussing the "[s]imilar language" of the two preemption provisions).

[7] Plaintiff Truss alleges that the nondisclosure of benzophenone on the Product's label constitutes a violation of the FDCA itself as well as the New York Public Health Law. SAC ¶¶ 24–26. But as explained *infra* at 19–20, to the extent she seeks to base her GBL claims on such alleged violations of other statues, Second Circuit precedent prohibits her. *See, e.g.*, *Broder v. Cablevision Sys. Corp.*, 418 F. 3d 187, 199–200 (2d Cir. 2005) (holding that § 349 cannot be used to "circumvent the lack of a private right of action for violation of a *federal* law") (emphasis in original).

[8] For the first time in their Second Amended Complaint, Plaintiffs allege the source of benzophenone in the Product is "unclear." SAC ¶ 35 n.14. Plaintiffs explicitly alleged in prior complaints why they believe benzophenone is in the Product, and the SAC still alleges that Plaintiffs believe benzophenone is inherently tied to octocrylene. *See* SAC ¶ 35, 37 n.15.

octocrylene);[9] 2020 Monograph at 2 (permitting the use of octocrylene up to 10%).[10] The 2020 Monograph does not mention benzophenone, or require that any warnings or statements about octocrylene, benzophenone, or the relationship between the two be included on a product label. Thus, Plaintiffs seek to use state law to *add* to the 2020 Monograph's requirements to achieve one of the following: a reformulation of the Product without octocrylene, or a new label warning that octocrylene may potentially degrade into benzophenone over time. *See e.g.*, SAC ¶¶ 47, 56, 67, 76 ("[t]he Product's packaging did not disclose the presence of benzophenone"); *id.* ¶ 172 ("the chemical octocrylene degrades over time resulting in an accumulation of benzophenone"). Plaintiffs' contention that state law mandates reformulation without octocrylene would impose state law requirements in addition to and in conflict with those in the 2020 Monograph, which expressly permits formulations *with* octocrylene. And this result is precisely what Congress sought to prohibit: a single state's law—common law no less—altering nationwide practices that reasonably rely on FDA's current guidance and regulations.

Plaintiffs' request for a new label warning is likewise doomed under *Critcher*. *See* 959 F.3d at 35. Plaintiffs complain that "nothing on the Product's label insinuates, states, or warns that the

---

[9] Although Plaintiffs' prior iterations of the complaint included images of the label, *see* FAC ¶¶ 26, 49, the SAC inexplicably omits it. Thus, Defendants attach the Product's label to this Motion. *See* Joyce Decl., Ex. 1; *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.") (internal citations omitted); *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991) ("Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on the motion.").

[10] Consistent with the CARES Act, FDA issued a proposed order in September 2021 seeking additional data on some of these ingredients, including octocrylene. *See* CARES Act §§ 3851(a)(2), 3854(c)(1)(B); FDA, *Proposed Order: Amending Over-the-Counter (OTC) Monograph M020: Sunscreen Drug Products for OTC Human Use* (issued Sept. 24, 2021) ("2021 Proposed Order"). FDA specified in its request for information that "[t]he deemed final order, which came into existence by operation of law on March 27, 2020 through the enactment of the CARES Act, established the current monograph for OTC sunscreen products." FDA, *Questions and Answers: FDA Posts Deemed Final Order And Proposed Order For Over-The-Counter Sunscreen* (Nov. 16, 2021) (https://www.fda.gov/drugs/understanding-over-counter-medicines/questions-and-answers-fda-posts-deemed-final-order-and-proposed-order-over-counter-sunscreen). FDA's current request confirms there is no ban on octocrylene—and certainly no labeling requirements associated with octocrylene like the ones Plaintiffs propose in this case—and that octocrylene remains an acceptable ingredient in sunscreens per the 2020 Monograph.

8

Product contains benzophenone." SAC ¶ 33. But there is no question that the Product complies with the 2020 Monograph. The 2020 Monograph expressly permits the use of octocrylene and does not require a sunscreen's label to state that octocrylene may degrade into benzophenone. An octocrylene or benzophenone warning would *add* to the existing and extensive requirements FDA already included in the 2020 Monograph. As such, Plaintiffs' failure to warn claim is preempted under *Critcher*. *See* 959 F.3d at 35–36; *see also Young v. L'Oréal*, No. 21-cv-0446 (GHW) (KHP), 2021 WL 2295625, at *5 (S.D.N.Y. May 20, 2021) (finding labeling omission claims brought under California law preempted by FDCA; "any state law that would require labeling that is not identical with the FDCA's requirements is expressly preempted"), *report and recommendation adopted*, 2021 WL 2292341 (S.D.N.Y. June 4, 2021).

In short, through their Complaint, Plaintiffs seek to accomplish exactly what Congress sought to prevent in passing section 379r(a)(2) of the FDCA. As the Second Circuit has explained,

> Congress or the FDA could have chosen to mandate such additional labeling when they established the comprehensive regulatory regime governing [food, drugs, and] cosmetics, but they did not. And because of the broad preemption provision that Congress *did* choose to include, Plaintiffs cannot now seek to impose those requirements through alternative means grounded in state law.

*Critcher*, 959 F.3d at 36–37; *see also Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 376 (S.D.N.Y. 2014). The Court should dismiss Plaintiffs' claims as  preempted by federal law. 21 U.S.C. § 379r(a)(2).[11]

## II.     PLAINTIFFS ALSO FAIL TO STATE A CLAIM UNDER STATE LAW.

### A.     Plaintiffs' Breach of Warranty Claims Fail.

#### 1.     Plaintiffs' Express Warranty Claims Fail Because Defendants Did Not Make Any Warranties Regarding Octocrylene Or Benzophenone, Or

---

[11] Defendants do not propose that the FDCA preempts a claim based *solely* on the question of whether a Product containing octocrylene—and then benzophenone, SAC ¶ 172—can be labeled as hypoallergenic. *See supra* at 3. That is a separate claim from Plaintiffs' original (and still primary) theory of liability that the Product misleads a reasonable consumer because it is formulated with octocrylene and does not disclose the alleged presence of benzophenone on the label.

**Breach Any Other Warranties Made, And Plaintiff Truss' Claim Fails For Lack Of Pre-Suit Notice.**

Plaintiffs' claims for breach of express warranty fail because Defendants have not made (and thus have not breached) an express warranty regarding octocrylene or benzophenone and have not breached any other express warranties allegedly made even if the Product contains benzophenone. Under New York and California law, breach of express warranty requires Plaintiffs to prove an "affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon." *Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoes Co. LLC*, 382 F. App'x. 110, 112 (2d Cir. 2010) (internal citation omitted); *Maneely v. General Motors Corp.*, 108 F.3d 1176, 1181 (9th Cir. 1997) (requiring proof of "affirmations of fact or promises that became part of the basis of the bargain").

First, Plaintiffs allege that Defendants created "an express warranty that the Product is safe for its intended use," SAC ¶ 170, but there is no such *express* written statement on the Product label. *See, e.g.*, *Harris v. Pfizer Inc.*, No. 21-cv-6789 (DLC), 2022 WL 488410, at \*7 (S.D.N.Y. Feb. 16, 2022) (dismissing express warranty claim for failure to allege that Pfizer "issued any express warranty that their medication was completely safe or free from" contaminant at issue). In fact, Defendants made no warranties whatsoever about octocrylene or benzophenone, and thus could not have breached such warranties. Attempts to infer express warranties that a product is free of any contamination have been consistently rejected. *See, e.g.*, *id.*[12] This Court should follow suit.

Second, even if the "hypoallergenic" and "free of oxybenzone" statements on the Product's label amount to express warranties, as Plaintiffs seem to allege, the statements are not actionable

---

[12] *Accord Sarr v. BEF Foods Inc.*, No. 18-cv-6409(ARR), 2020 WL 729883, at \*7 (E.D.N.Y. Feb. 13, 2020) (dismissing express warranty claim because the defendant "did not expressly warrant that the Mashed Potatoes did not contain vegetable oil"); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 167 (S.D.N.Y. 2021)

because they are true and would not mislead a reasonable consumer. *See, e.g.*, *Wallace v. Wise Foods, Inc.*, No. 20-cv-6831 (JPO), 2021 WL 3163599, at *6–7 (S.D.N.Y. July 26, 2021) (dismissing an express warranty claim because "the Court has already determined that the [Product's] labeling is unlikely to deceive or mislead a reasonable consumer"); *Myers-Taylor v. Ornua Foods North America, Inc.*, No. 3:18-cv-01538-H-MDD, 2019 U.S. Dist. LEXIS 17678, at *16–17 (S.D. Cal. Feb. 4, 2019) (same). Plaintiffs allege the "hypoallergenic" statement is false, SAC ¶¶ 35 n.13, 37, 38, but they fail to provide support for this theory. Plaintiffs cite two articles to suggest that benzophenone is an allergen, but neither supports their claim. The first article refers to a group of substances called "benzophenones,"[13] but it is not clear whether the article has any relation to the type of benzophenone Plaintiffs allege is in the Product. Indeed, the article distinguishes among different "benzophenones" and notes that "the literature regarding adverse reactions to [benzophenones -8 and -10] is scarce."[14] The second article never calls benzophenone an allergen at all. SAC ¶ 37 n.15 and n.16. In sum, Plaintiffs do not point to any evidence that the Product is not hypoallergenic. And a plaintiff must "allege facts showing that the products in question are *not* hypoallergenic under a *plausible* definition of that term" to survive a motion to dismiss a breach of express warranty claim. *See Rugg v. Johnson & Johnson*, No. 17-CV-05010 (BLF), 2018 WL 3023493, at *4 (N.D. Cal. June 18, 2018) (emphasis added). Plaintiffs failed to do so here.

Third, although unclear, Plaintiffs similarly attempt to tie their breach of express warranty claims to the statement "free of oxybenzone." SAC ¶ 30 n. 9. They allege this statement is

---

(similar); *Becerra v. Dr Pepper/Seven Up, Inc.*, No. 17-cv-05921-WHO, 2018 WL 3995832, at *9 (N.D. Cal. Aug. 21, 2018) (dismissing express warranty claim for failure to allege that the term "diet" warranted that consumers would lose weight), *aff'd*, 945 F.3d 1225 (9th Cir. 2019).
[13] https://journals.lww.com/dermatitis/Fulltext/2014/01000/Benzophenones.2.aspx (last visited May 2, 2022). Plaintiffs cite this article at SAC ¶¶ 35 n.13 and 38 n.17.
[14] *Id.*

misleading because oxybenzone is also known as benzophenone-3. *Id*. But Plaintiffs' own pleading confirms that oxybenzone (benzophenone-3) is a different compound entirely from the benzophenone allegedly associated with octocrylene. SAC ¶¶ 2, 2 n.1 ("The U.S. Food and Drug Administration (FDA) has approved benzophenone-3 (BP3), also known as oxybenzone, as an active ingredient in sunscreen[,]" but "the Product is contaminated with and contains benzophenone, a known mutagen, carcinogen, allergen, and endocrine disruptor that *is not FDA approve[d]* as an active ingredient in sunscreen products.") (emphasis added). Despite Plaintiffs' attempt to confuse the issues, they do not—because they cannot—allege the Product contains oxybenzone or benzophenone-3. Thus, the express warranty claim about the "free of oxybenzone" representation fails.

Finally, Plaintiff Truss' express warranty claim fails because she has not provided pre-suit notice of the alleged breach. To assess a claim for breach of an express warranty under New York law, "a buyer must provide the seller with timely notice of the alleged breach." *Valcarcel v. Ahold U.S.A., Inc.*, No. 21-cv-07821 (JSR), 2021 WL 6106209, at *9 (S.D.N.Y. Dec. 22, 2021) (internal citations omitted); *see* N.Y. U.C.C. § 2-607(3)(a) ("[B]uyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach."). Because Plaintiff "failed to allege pre-suit notice in a non-equivocal manner, the complaint fails to state a claim for breach of warranty under New York law." *Valcarcel*, 2021 WL 6106209, at *9.

### 2.    Plaintiffs' Implied Warranty Claims Fail For Lack of Privity And Because The Product Is Fit For Its Intended Purchase, And Plaintiff Truss' Implied Warranty Claims Fails For Lack Of Notice.

First, Plaintiffs' implied warranty claims fail because Plaintiffs lack privity with Defendants. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (affirming dismissal of California implied warranty claim due to a "lack of vertical privity"); *Bellevue South Associates v. HRH Const. Corp.*, 78 N.Y.2d 282, 298 (1991) ("Defenses available

to claims of breach of the implied warranty of merchantability include . . . lack of privity . . . .")
The Complaint confirms that no privity existed between Plaintiffs and Defendants because each
Plaintiff purchased the Product from third-party retailers (*i.e.*, Walgreens, Rite-Aid, Walmart).
SAC ¶¶ 44, 53, 62, 72. "[A]n end consumer . . . who buys from a retailer is not in privity with a
manufacturer." *Clemens*, 534 F.3d at 1023.

Second, to state a claim for breach of implied warranty, Plaintiffs must plead that the
Product "was unfit for the ordinary purposes for which it was to be used[.]" *Walsh v. Hayward
Industrial Products, Inc.*, 7 F. App'x. 72, 73 (2d Cir. 2001); *Birdsong v. Apple, Inc.*, 590 F.3d 955,
959 (9th Cir. 2009) (affirming dismissal of breach of implied warranty claim where "the plaintiffs
[did] not allege the iPods failed to do anything they were designed to do"). In *Harris*, the district
court rejected plaintiffs' allegation that a drug was unmerchantable for failure to show how the
presence of contaminants rendered it "unfit for its ordinary purpose." 2022 WL 488410, at *8.
Here too, Plaintiffs did not allege—indeed, because they cannot—that any amount of
benzophenone rendered their Product unfit for the precise purpose for which it was intended: an
effective *sunscreen*. Their new allegations pay lip service to this requirement, with Plaintiff
Pettibone now alleging she "*felt* that the Product failed to provide an adequate or expected level of
sun protection." SAC ¶ 77. Plaintiff Pettibone's feelings are not enough to form plausible factual
allegations. Plaintiffs' implied warranty claim cannot survive.

Finally, as with Plaintiff Truss' breach of express warranty claim, her claim for breach of
implied warranty must also fail for lack of pre-suit notice. *Valcarcel*, 2021 WL 6106209, at *9 (the
notice requirement also applies to claims for breach of implied warranty under New York Law).

### B.    Plaintiffs' Statutory Claims Fail For Many Reasons.

Plaintiffs' principal theory of liability remains an omissions claim (and until the most
recent amendment, this supposed failure to disclose benzophenone among the Product's

ingredients was Plaintiffs' only theory of liability). *See, e.g.*, SAC ¶¶ 47, 56, 67, 76; *see also id.* ¶¶ 110, 119, 123, 135, 147, 151, 158, and 159. Yet Plaintiffs do not allege facts to support an omissions claim under the New York or California consumer statutes at issue. As a second theory of liability, Plaintiffs now allege that the claims "hypoallergenic" and "free of oxybenzone" labels are affirmatively misleading, *id.* ¶ 30, but they have not pleaded nor could they plead any facts plausibly suggesting either statement is actionable.

1.     **Plaintiffs' Omissions Claim Fails in New York and California.**

a.     **Plaintiff Truss Fails To Allege That Defendants *Alone* Knew The Product Contained Benzophenone Before She Purchased The Product, Which Is Fatal To Her New York GBL Claims.**

The GBL provides a very narrow basis for allowing claims to go forward on an omissions theory—the defendant *alone* must have known material information that it failed to disclose. As the Court of Appeals explained, "the [GBL] surely does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation. The scenario is quite different, however, where the *business alone* possesses material information that is relevant to the consumer and fails to provide this information." *Oswego v. Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 26 (1995) (emphasis added); *see, e.g., Dimond v. Darden Rests., Inc.*, No. 13-cv-5244 (KPF), 2014 WL 3377105, at *13 (S.D.N.Y. July 9, 2014) and *Beth Israel Med. Ctr. v. Verizon Bus. Network Servs., Inc.*, No. 11-cv-4509 (RJS), 2013 WL 1385210, at *8 (S.D.N.Y. Mar. 18, 2013) (dismissing GBL claims for failure to plead that Defendant alone knew of the alleged omitted information).

Plaintiff Truss does not allege that Defendants "alone" knew about the alleged relationship between octocrylene and benzophenone. Her own allegations confirm the opposite. Although Plaintiff's amendment conspicuously removed the allegation that the "personal care product

14

industry has known for some time that octocrylene is contaminated with benzophenone," FAC ¶ 30–31, the SAC continues to allege that Defendants did not alone have access to the information regarding benzophenone. SAC ¶ 37 n.15 (publicly available study); SAC ¶ 23 n.7 (publicly available letter to California regulators); SAC ¶ 41 n.21 (website with publicly available information). These allegations foreclose any inference that Defendants *alone* knew about the potential for octocrylene to degrade into benzophenone over time. *See, e.g.*, *Dimond*, 2014 WL 3377105, at *13 (dismissing where plaintiff failed to plead facts to show that the omitted information was known to the business alone and could not be reasonably obtained by others).

> **b.      The California Plaintiffs Fail To Allege Facts To Support Any Limited Bases For Omissions Claims Under The CLRA, FAL, And UCL.**

Like Plaintiff Truss, the California Plaintiffs primarily base their state law claims on Defendants' alleged omission of a warning that the Product contains or degrades into benzophenone. SAC ¶¶ 110, 119, 123, 135, 147, 151, 158, and 159. Consistent with the GBL, under the California statutes, "[a] failure to disclose a fact one has no affirmative duty to disclose is [not] likely to deceive anyone within the meaning of California law." *Hodson v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018) (second alteration in original) (internal citation omitted). Unlike the GBL, however, California law holds that an obligation to disclose may arise in four narrow circumstances: "(1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed." *Id.* at 862.

The California Plaintiffs fail to plead facts to satisfy any of these exceptions. As noted in the previous section, Plaintiffs have not alleged that Defendants had *exclusive* knowledge of the

presence of benzophenone in the Product, *supra* at 14–15; *see also Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145, 1147–48 (9th Cir. 2012) (dismissing in light of such failure); *Patt v. Antech Diagnostics, Inc.*, No. 8:18-cv-01689-JLS-DFM, 2020 WL 5076970, at *10 (C.D. Cal. May 18, 2020) ("In sum, Plaintiffs have not plausibly alleged that, at the relevant time, Defendant possessed *exclusive* knowledge giving rise to a duty to disclose. Any alleged omission is therefore not actionable.") (emphasis added).

Next, the California Plaintiffs neither allege a fiduciary relationship with Defendants nor do they allege that Defendants actively concealed any misrepresentations or omissions. To constitute active concealment, Plaintiffs must demonstrate that Defendants took steps to "affirmatively hide" information from consumers. *See Harris v. R. J. Reynold Vapor Co.*, No. 15-cv-04075-JD, 2017 WL 3617061, at *2 (N.D. Cal. Aug. 23, 2017) (noting that "[m]ere nondisclosure does not constitute active concealment" and requiring allegations of "actively or affirmatively hid or suppressed" facts to support a duty to disclose based on active concealment). Plaintiffs have not done that here.

Finally, Plaintiffs do not claim to be proceeding under a partial omission theory. Even if they did, Plaintiffs do not allege that Defendants made any representations, whether partial or otherwise, regarding the relationship between octocrylene and benzophenone in the Product.[15] Plaintiffs similarly do not allege that the Product label's "hypoallergenic" and "free of oxybenzone" statements, *supra* at 3, are partial omissions. Indeed these statements are true and

---

[15] *Sanders v. Apple Inc.*, 672 F.Supp.2d 978, 986 (N.D. Cal. 2009) (rejecting partial representation theory where the plaintiff failed "to describe with specificity representations made by [the defendant] that would give rise to a duty to disclose").

thus cannot form the basis for a partial omission claim.[16] Ultimately, Plaintiffs have failed to allege a duty to disclose under California law.

### 2. Plaintiffs Fail To Plead Affirmative Misrepresentation Theories.

#### a. Plaintiffs Do Not Allege Any Statement Regarding Benzophenone Or Octocrylene On The Product Label.

Plaintiffs do not and cannot identify any affirmative statement on the Product's label (or by Defendants anywhere else) regarding benzophenone and octocrylene or the relationship between those two compounds. And Courts repeatedly have recognized—including Judge Cote recently—that the presence of a contaminant not listed on a drug's label is not a misrepresentation. *Harris*, 2022 WL 488410, at *7 (absent an express statement to the contrary, "[i]t is not enough to allege that the plaintiffs inferred from this label that the product did not contain" contaminants); *see*, *e.g.*, *Zottola v. Eisai Inc.*, 20-cv-02600 (PMH), 2021 WL 4460563, at *5 (S.D.N.Y. Sept. 29, 2021) (dismissing GBL claims because plaintiff "only refer[red] to unspecified misleading representations contained in the Medications' 'labels and disclosures'" regarding safety "as opposed to challenging a particular representation"); *Womack v. Evol. Nutrition Assocs.*, No. 6:21-cv-00332, 2021 WL 5906340, at *10 n.8 (N.D.N.Y. Dec. 14, 2021) (similar).

#### b. Plaintiffs Fail To Plead Any Misrepresentation Theory Based On "Hypoallergenic" Labeling.

Plaintiffs newly attack the word "hypoallergenic" on the Product's label. *See* SAC ¶ 30; Joyce Decl., Ex. 1. Plaintiffs now allege for the first time that the phrase is misleading because benzophenone can act as an "allergen." SAC ¶¶ 35 n.13, 37, 38. Yet Plaintiffs provide no evidence that benzophenone is an allergen or is capable of causing an allergic reaction. Lacking any

---

[16] *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973–74 (N.D. Cal. 2008), aff'd, 322 F. App'x. 489 (9th Cir. 2009) (rejecting omission by partial representation theory where there was "no misstatement of fact"); *Gray v. Toyota Motor Sales, U.S.A.*, 2012 WL 313703, at *6 (C.D. Cal. Jan. 23, 2012) (same).

scientific basis on which to base this theory,  as discussed *supra* at 10–11, Plaintiffs allege—again for the first time—that they suffered certain skin irritations following use of the Product. SAC ¶¶ 48, 57, 68, 77. But these allegations of temporal skin irritation do not show the Product was not "hypoallergenic" or that such irritations were caused by benzophenone.[17] Nor is there anything in Plaintiffs' Second Amended Complaint more generally to connect the type of benzophenone allegedly in the Product—which Plaintiffs themselves never even bother to identify—to any of the dermatological conditions they have allegedly experienced.

In fact, at least one court has held that a reasonable consumer would not expand the meaning of "hypoallergenic" to simple "skin sensitizers" or "irritants." *See Rugg*, 2018 WL 3023493 at *3 ("the Court finds it completely implausible that a reasonable consumer would understand the use of the term 'hypoallergenic' on a product's label to mean that the product does not contain *any* ingredients, in any concentration, which could 'sensitize' the skin, cause cancer, or have any other negative effect, regardless of whether such effect constitutes an allergic reaction") (emphasis in original). Ultimately, Plaintiffs fail to allege any facts upon which to conclude that benzophenone acts as an allergen such that the Product is no longer hypoallergenic.

### c.      Plaintiffs Fail To Plead Any Misrepresentation Theory Based On "Free Of Oxybenzone" Labeling.

Plaintiffs also newly seem to suggest that "free of oxybenzone" is a misrepresentation regarding benzophenone. SAC ¶ 30 n.9. But these compounds have nothing to do with one another. Whereas oxybenzone is also known as benzophenone-3, as explained *supra* at 4, benzophenone-3 is an FDA approved ingredient and it is an entirely different benzophenone than the substance about which Plaintiffs are complaining. Plaintiffs' own pleading confirms that benzophenone—

---

[17] Moreover, Plaintiffs are not pursuing any personal injury claims in the Complaint, so their allegations of alleged skin irritations are not relevant as a form of injury. Plaintiffs simply use these allegations in an attempt to demonstrate that the Product potentially contains an allergen.

the subject of their claims—is different. SAC ¶ 2 & n.1.  Plaintiffs do not, because they cannot, allege that "free of oxybenzone" is an affirmative misrepresentation about benzophenone, a different substance entirely.

> **d.    Any Statements From Defendants' Website Are Not Actionable Misrepresentations.**

Plaintiffs claim that certain statements on Defendants' website regarding safety and efficacy testing of the Product and its gentleness on babies' skin were misleading. SAC ¶¶ 29, 31, 32, 34, 35. None of the Plaintiffs claim to have viewed the website before purchasing the Product. *Id.* ¶¶ 44–81. Thus, Plaintiffs have failed to allege any causal nexus between these statements and Plaintiffs' alleged injuries. *See e.g.*, *Gale v. Int'l Bus. Machs. Corp.*, 9 A.D.3d 446, 447 (2d Dep't 2004) (dismissing GBL claims because "[i]f the plaintiff did not see any of these statements, they could not have been the cause of his injury, there being no connection between the deceptive act and the plaintiff's injury"). Under California law, which requires actual reliance in addition to causation, Plaintiffs' allegations are particularly insufficient because Plaintiffs could not have relied on the website statements without having seen them in the first place. *Sateriale v. R.J. Reynold Tobacco Co.*, 697 F.3d 777, 793–94 (9th Cir. 2012) (affirming dismissal of UCL and CLRA claims and holding that, where such claims are based on a theory of fraud, they require proof of "actual reliance on the allegedly deceptive or misleading statements, and that the misrepresentation was an immediate cause of [their] injury-producing conduct") (internal citations and quotation marks omitted) (alteration in original).

> **3.    Second Circuit Law Precludes Plaintiff Truss From Predicating Deception On The Alleged Violation Of Another Statute.**

Additionally, Plaintiff Truss' GBL claims fail to the extent that they are based on alleged violations of other statutes. *See* SAC ¶¶ 24–26. Second Circuit law forbids a plaintiff from attempting to base a GBL claim on the violation of another statute. *See Conboy v. AT&T*, 241 F.3d

242, 257–58 (2d Cir. 2001) (rejecting plaintiff's attempt to effectively create a private right of

action under a state statute by arguing that defendant "engaged in a 'deceptive act' within the

meaning of [GBL] Section 349 by violating [the other state law]"); *Broder v. Cablevision Sys.

Corp.*, 418 F. 3d 187, 199–200 (2d Cir. 2005) (applying *Conboy*, and holding that § 349 cannot be

used to "circumvent the lack of a private right of action for violation of a *federal* law," and

reiterating that circuit law precludes claiming that deception exists because another statute or

regulation was violated, particularly one "that on its face does not address deceptive or misleading

behavior"). Here, Truss alleges that the non-disclosure of benzophenone in the Product renders the

Product in violation of the FDCA and New York Public Health Law, SAC ¶¶ 24–26,[18] and

therefore the Product's labels are deceptive. This is precisely what the Second Circuit prohibited

in *Broder* and *Conboy*.[19]

## C.    Plaintiffs' Unjust Enrichment Claim Fails.

Each Plaintiffs' unjust enrichment claim fails because they are duplicative of other claims

(and they have failed to plead any conduct that is unjust), and Plaintiff Truss' unjust enrichment

claim fails for the additional reason that she is in an contractual relationship with Defendants. First,

all Plaintiffs' unjust enrichment claims are duplicative. Plaintiffs' unjust enrichment claims are

premised on the same alleged deception on the Product's packaging that serves as the basis for the

rest of Plaintiffs' claims. *See, e.g.*, SAC ¶ 189 ("Defendants' labeling of the Product was

misleading to consumers, which caused injuries to Plaintiffs and the other members of the Classes

---

[18] Of course, as detailed *supra* 6–9, the non-disclosure of benzophenone does not actually violate the FDCA. Rather, the FDCA expressly preempts any state law claim that Defendants had to disclose benzophenone.

[19] To the extent any of Plaintiffs' claims are based solely on alleged violations of the FDCA, *see* SAC ¶¶ 25–26, they all fail because state-law claims based only on violations of the FDCA preempt state law. *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 & n. 4 (2001); *Verzani v. Costco Wholesale Corp.*, No. 09-cv-2117(CM), 2010 WL 3911499, at *3 (S.D.N.Y. Sept. 28, 2010) (dismissing claims predicated on FDCA violations), *aff'd*, 432 F. App'x. 29 (2d Cir. 2011).

because they would have not purchased the Product if Defendants had disclosed that the Product contained benzophenone.").[20]

Plaintiffs may not support an unjust enrichment claim by simply porting over the wrong from another cause of action. *See, e.g.*, *Harris*, 2022 WL 488410, at *9 (unjust enrichment claim "is not available where it simply duplicates, or replaces, a conventional contract or tort claim"); *Corsello v. Verizon N.Y., Inc.*, 944 N.Y.S.2d 732, 740 (2012) ("[u]njust enrichment is not a catchall cause of action to be used when others fail"); *In re Sony PS3 Other OS Litig.*, 551 F. App'x. 916, 923 (9th Cir. Jan. 6, 2014) (affirming dismissal of unjust enrichment claim because "[i]n light of the adequate legal remedies available [from duplicative claims elsewhere in the Complaint], Plaintiffs cannot state a claim for unjust enrichment").

Second, Plaintiffs fail to plead unjust conduct.  As detailed above, Plaintiffs have not pleaded unlawful omissions or misrepresentations.

Finally, Plaintiff Truss' claim fails because it rests on quasi-contractual principles applicable only in the absence of an express contract governing the subject at issue. *See, e.g.*, *MacDraw, Inc. v. The CIT Grp. Equip. Fin, Inc.*, 157 F.3d 956, 964 (2d Cir. 1998). But she holds herself out as having "formed a contract with Defendants at the time Plaintiff . . . purchased the Product," SAC ¶ 167, in order to support her breach of express warranty claims. Therefore, these quasi-contractual claims fall on Plaintiff's own allegations of an express warranty on the same subject, even though the Product did not warrant specifically about the presence of benzophenone, *see supra* at 9–12. The alleged existence of a contract between the parties defeats her quasi-contractual unjust enrichment claim on same subject. Although she attempts to salvage her

---

[20] Similarly, Plaintiffs' unjust enrichment claim is duplicative because it is based on purported violations of the FDCA, which Plaintiffs seek to enforce through other statutory consumer protection claims and common law causes of action. SAC ¶¶ 24–27, 101–183. Plaintiffs have not demonstrated any of the violations on which their claims rely, and Plaintiffs therefore fail to allege unjust conduct.

unjust enrichment claim by pleading it "in the alternative to [her] breach of express warranty claim," SAC ¶ 186, the problem is that, in all events, there is no dispute that there are express warranties on the label (regardless of whether the label gives rise to the particular express warranty she contends). *King's Choice Neckwear, Inc. v. Pitney Bowes, Inc.*, No. 09 Civ. 3980 (DLC), 2009 WL 5033960, at *7 (S.D.N.Y. Dec. 23, 2009) (holding that, where the Parties do not dispute a contract's validity or enforceability, the Plaintiff "cannot plead an unjust enrichment claim in the alternative to its breach of contract claims").

## III.   EVEN IF PLAINTIFFS' CLAIMS SURVIVE DISMISSAL, PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF.

Plaintiffs request injunctive relief regarding Defendants' labeling practices. *See, e.g.*, SAC ¶¶ 86, 98, 111, 138, 154, 1564. Even if any Plaintiff stated a claim, these requests for injunctive relief must be dismissed for lack of Article III standing under Rule 12(b)(1). The Second Circuit has made clear that "to maintain an action for injunctive relief, a plaintiff 'cannot rely on past injury . . . but must show a likelihood that he . . . will be injured in the future.'" *Berni*, 964 F.3d at 147 (explaining that any such future harm must be "imminent"). Plaintiffs plead no possibility of future harm, let alone imminent future harm. *See id.* ("For several reasons, past purchasers of a product . . . are not likely to encounter future harm of the kind that makes injunctive relief appropriate."); *Valcarcel*, 2021 WL 6106209, at *10 (dismissing injunctive claims under *Berni*); SAC ¶¶ 49, 58, 69, 78 (alleging that if Plaintiffs had known the truth about the Product, they would not have purchased it). Plaintiffs therefore cannot plausibly allege that they will be deceived by the same Product label again.

In an attempt to avoid dismissal, Plaintiffs allege they "may be harmed again in the future because they want to purchase the Product in the future" with corrective labeling, SAC ¶ 86, but as this Court recognized even before *Berni*, such allegations do not establish imminent future harm.

*See Suarez*, 2019 WL 1046662, at \*2, 4 (dismissing injunctive relief claims for lack of a cognizable future injury despite Plaintiff's allegations that she "continues to desire to purchase [the product] if they were accurately marketed and labeled"). Post-*Berni* decisions consistently have done likewise. *See also*, *e.g.*, *Valcarcel*, 2021 WL 6106209, at \*10 (rejecting standing notwithstanding plaintiff's contention that "she is unable to rely on the accuracy of the product's front label in the future, which causes her to avoid purchasing the product, even though she would otherwise like to do so"). Because Plaintiffs cannot demonstrate they imminently will be deceived again, their requests for injunctive relief must be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that Plaintiffs' claims be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, 12(b)(1).

Dated: May 26, 2022

/s/ Eamon P. Joyce
Eamon P. Joyce
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Tel: (212) 839-5300
ejoyce@sidley.com

T. Robert Scarborough\*
tscarborough@sidley.com
Elizabeth M. Chiarello\*
echiarello@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Tel: (312) 853-7000

*\*Admitted Pro Hac Vice*
*Counsel for Defendants*